## St. L., I. M. & S. Ry. v. Worthen.

1. TAXATION: *Valuation of property.*

   Under the Constitution of this State (article 16, section 5), the Legislature has power to classify property for purposes of taxation, and to provide for the valuation of different classes by different methods.

2. SAME: *Same.*

   Such classification under a statute which operates equally and uniformly upon all property of like kind, is not prohibited by the Federal Constitution.

3. SAME: *Same.*

   The power to classify property for taxation, makes it competent for the Legislature to provide the mode of assessing the several classes, and the period for which the assessment of each class shall be made.

4. SAME: *Same: Assessment of railways.*

   The separate classification of railway property for taxation, and its assessment by an instrumentality different from that employed in the valuation of other property, are justified by its peculiar nature and uses.

5. SANE: *Same.*

   The provisions of the revenue act of 1883, embraced in Mansf. Digest, secs. 5647–5659, are not unconstitutional on the ground that they require the tracks and "rolling stock" of railways to be assessed by a State Board of Commissioners, while the act provides for the valuation of all other property by County Assessors.

6. SAME: *Same.*

   It is also competent for the Legislature to require the annual assessment of railway tracks, while other real estate is required to be assessed only once in two years—the distinction thus made being justified by the dissimilarity of such tracks from all other real property.

7. SAME: *Same.*

   The revenue act having fixed the time and place for the meeting of the State Board for the valuation of railway tracks, and no obstruction existing under the statute to the appearance of any one before the board to assert his rights, the failure to require that notice of the board's meeting shall be given to the railroad companies, does not render the act obnoxious to the charge of taking property without due process of law.

8. SAME: *Same.*

   Nor is said statute unconstitutional because it fails to provide for an appeal from the valuation of railroad property fixed by the State board.

LII—34.

9.  SAME:  *Same.*

Where no fraud is charged in the assessment of railroad property, a Chancellor
will not be warranted in restraining the collection of a tax levied upon it,
merely because in his judgment the assessing board has over-valued it.

APPEAL from *Pulaski* Chancery Court.

D. W. CARROLL, Chancellor.

This suit was brought by the St. Louis, Iron Mountain and
Southern Railway Company against R. W. Worthen, as Col-
lector of Pulaski County, and others, to enjoin the collection
of taxes levied upon the company's railway "track" and "roll-
ing stock" in the various counties through which its road ex-
tends.    The complaint alleges that all of plaintiff's property
was duly assessed for the year 1885 ; that plaintiff duly made
its report to the commissioners as required by law, in March,
1886, of all its property, giving its value, etc., as required ;
that the commissioners proceeded thereafter to appraise plain-
tiff's property, and raised said appraisement and assessment
greatly in excess of the value as appraised in 1885, the year
before.    The bill then charges :   "First—That the meeting of
the Board of Railroad Commissioners was without notice to
plaintiff.    Second—That, regardless of the fact that it had ap-
praised and assessed plaintiff's 'railroad tracks,' classed by
the revenue law as 'real estate' in April, 1885, it did, on April
1, 1886, arbitrarily, unjustly and illegally, assess the railroad
tracks denominated 'real estate,' for the year 1886, by doub-
ling the values upon said property.    Third—That the law au-
thorizing the appraisement of plaintiff's railroad tracks, de-
nominated 'real estate,' every year, was in violation of section
21, article 2, of the Constitution of Arkansas, and of the fifth
and fourteenth amendments to the Constitution of the United
States.    Fourth—That the law under which the assessment
was made was void, because it deprived plaintiff of all right of
appeal."    The bill, after tendering and offering to pay into
court the taxes upon its personal property amounting to about
$50,000, prayed for a temporary injunction, restraining the said

St. L., I. M. & S. Ry. v. Worthen.

several Collectors from attempting to collect the tax so made under said illegal assessment, and upon final hearing that a perpetual injunction be granted. The defendants filed a demurrer upon the ground that there was no equity in the bill. The court sustained the demurrer, and plaintiff declining to amend, the bill was dismissed.

Section 5647 *et seq.*, Mansf. Dig., contain the following provisions with reference to the taxation of railroad property:

1. A sworn schedule or statement of such property is required to be filed annually with the Secretary of State, by every person, company or corporation owning or operating a railroad in the State. 2. The board, consisting of the Governor, Secretary of State and Auditor of Public Accounts, at a time and place fixed by law, are required annually to examine such lists or schedules, and to appraise the value of such property. There is no provision in the law requiring the giving of any notice to the railroads, nor for any formal public hearing, contest, or review of the board's action, nor is any appeal to any revisory board or court provided. In short, the board's finding or assessment is final and conclusive. The law provides that all property, other than railroad " rolling stock" and "tracks," shall be assessed by the County Assessor; real estate, biennially, and personalty, annually. The statute makes railroad "tracks," realty, and "rolling stock" personalty.

*Dodge & Johnson* for appellant.

Secs. 5647 to 5784 Mansf. Dig. are unconstitutional, and void on three grounds :

First—Because the assessment, according to which they are levied, was made in pursuance of the discriminating provisions of the State laws, in the enforcement of which the company's "railroad track," classed by law as "*real estate*," was assessed each and every year, when all other real estate, other than railroad, was only assessed once every two years, thus subjecting railroad real estate to an unjust proportion of the

public burdens, and denying it the equal protection of the laws guaranteed by the fifth and fourteenth amendments of the Federal Constitution.

Second—Because the assessment was made in pursuance of certain provisions of the State laws which gave (*a*) no notice to the railroad company; nor (*b*) afforded any opportunity to be heard respecting the value of the property : nor (*c*) afforded any remedy for the correction of any errors by the Board of Railroad Commissioners, by appeal or otherwise : nor (*d*) required the board to assess railroad property in the same manner as individual property was assessed; nor (*e*) required said board to adopt any rule or regulation in the assessment of railroad property as is done and required of County Assessors in assessing all property other than that of railroads, thus depriving it of its property without that due process of law guaranteed by the fifth and fourteenth amendments of the Federal Constitution.

Third—Because said assessment was made under certain State laws violative of section 21, article 2, and section 5, article 16, of the Constitution of Arkansas.

The act denies to railways the equal protection of the laws, and deprives such persons of their property without due process of law.

Assuming that corporations are persons within the meaning of the fourteenth amendment to Constitution United States, the discriminations complained of are :

1.   A different manner of assessment.   Sec. 5676 Mansf. Dig. provides that the real estate *of all persons* other than railroads, shall be assessed *every two years*.

Under sec. 5650 " railroad tracks " are declared for the purpose of taxation, to be " real estate," yet by sec. 5652 railroad tracks are assessed *every year*.   This is discrimination. *Sec. 1, art. 14, Const. U. S.; sec. 2, art. 2, and secs. 3 and 20, art. 2, and sec. 5, art. 14 Const. Ark.; 27 Iowa, 42,*

2. There must be uniformity in the mode of assessment as well as equality in the rate of taxation. *Cooley on Const. Lim., 3d ed., p. 622; 13 Fed. Rep., 733; 9 Dana, 513; 3 Ohio St., 1; 41 Cal., 335; 25 Ark., 295; 32 id., 31; 2 id., 299; 5 id., 205; 103 U. S., 408; 5 Allen, 436; 12 id., 237; 73 N. C., 474; 118 Mass., 389; 13 Am. Law. Reg., N. S., 443; 36 N. J. Law., 70.*

3. Denial of appeal from the assessment as made by the Board of Railroad Commissioners.

All property owners *other than railway corporations*, have this right of appeal. *Mansf. Dig. secs. 5687-9, 5692, 1436.* As to railroads no provision whatever is made for an appeal, the action of the board is final, and they have no redress. *6 Cranch, 133-5.* The Constitution guarantees the right of appeal in all instances. *Sec. 15., art. 7, and secs. 33 and 35, art. 7; secs. 37, 42, 61, 52, art. 7, Const. Ark.; 5 Ark., 362.*

4. The assessment is made without notice.

5. None of the safeguards which the laws throw around the valuation of property other than railroads are applied. *Mansf. Dig. secs. 5668-9, 5674-5, 5672, et seq.* And the right of appeal is expressly granted. *Sec. 5687.*

Now, what are the provisions of law as regards the assessment of railroad property by the Board of Railroad Commissioners?

1st. The board are required to assess the personal property of railroads *once every year.* (*Sec. 5652, Mansfield's Digest.*)

2d. It shall also assess the real estate denominated Railroad Track, *once every year.* (*Sec. 5652.*)

3d. The assessment shall be made according to the opinion of the board, and it is left discretionary to put any valuation it may see proper, *in its opinion*, upon railway property. There is no rule of guidance whatever, no limit placed to the judgment, opinion or discretion of the board. (*Sec. 5652.*)

4th. The value of railway property is not limited to its

*true market value*, but is limited to such a valuation as may, in the *opinion* of the board, seem *fair* or *reasonable*.

5th.   No appeal is allowed from the Board of Railroad Commissioners; their appraisement is final and irrevocable.

6th.   No notice is given of the final assessment when made by the board, prior to the certification of the lists to the several counties.

Such seems to us to be a difference fatal to the validity of the statute under discussion.

*W. E. Atkinson* Attorney General, and *T. D. Crawford*, for appellee.

1.   The act, it would seem, was copied from the Illinois act, which is quoted in *92 U. S., 578.*   Similar acts have been passed in many of the States, citing them, and have been upheld by the courts.   It has been frequently attempted to show that the acts are within the prohibition of the Constitution as to *uniformity of taxation*.

That the Legislature can classify property for the purposes of taxation, is clear.   *39 Ark., 353.*   The Legislature is left free to direct the manner in which the value is to be ascertained, so that it make the value equal and uniform throughout the State.   *4 Wheat., 430; 101 U. S., 160; 46 Wisc., 176; 60 Cal., 12; 92 U. S., 601; 115 U. S., 331; 81 Ky., 495; 67 Iowa, 199.*

2.   DUE PROCESS OF LAW.

The act does not deprive railroads of their property " without due process of law."   This phrase and " the law of the land " mean the same.   *Sec. 21, art. 2, Const. 1874.*   And as applied to proceedings for the levy and collection of taxes, does not imply or require the right to such notice and hearing as are considered essential to the validity of the proceedings and judgments of judicial tribunals.   *92 U. S., 575–618; 81 Ky., 511; 115 U. S., 331.*

St. L., I. M. & S. Ry. v. Worthen.

As sustaining the rule laid down in *115 U. S., 331*, which is conclusive upon every question raised in this case, see *76 Ill., 598; ib., 201; 48 N. J. L., 146; 65 Ala., 142; 119 Ill., 182; 9 Mo. App., 458; 127 Ill., 27; ib., 627.*

In answer to the complaint that the board doubled the assessment of 1885, the road having the same mileage, see *127 Ill., 627.*

COCKRILL, C. J.   This appeal raises the question of the constitutionality of the provisions of the revenue act of 1883, creating the State Board of Railroad Commissioners for the assessment of railway property for taxation. *Secs. 5647, et seq., Mansf. Dig.* It is an attempt on the part of the railway to enjoin the collection of taxes on account of the invalidity or nullity of the assessment.

The legality of the proceedings of the Board in assessing railway property was affirmed by this court in the case of *Ry. v. Worthen, 46 Ark., 312*, and by the Supreme Court of the United States in *Huntington v. Worthen, 120 U. S., 97;* and thus the constitutionality of the act creating the board was impliedly recognized by both tribunals; but the question was not argued in either case, and we are now asked to overthrow the act because (1), it authorizes the assessment of railways by a different instrumentality from that employed to assess other property; because (2), it authorizes the assessment of '' railway tracks '' (a term which includes the right of way) annually, whereas other real estate is assessed biennially; because (3), it is said the board meets without notice to the railways; and because (4), no appeal is provided from the assessment of the board, whereas that privilege is accorded to the owners of all other property.

Similar statutory provisions exist in many States of the Union, and numerous decisions are reported from various States and from the Supreme Court of the United States, affirming the validity of the acts, in some one of which every

question here raised has been pressed upon the attention of the court, but no case is cited denying their legality.

**1. TAXATION:** *Valuation of property.* The Constitution of this State provides that the value of property for taxation shall be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform. *Sec. 5, art. 16.* There is nothing in this or any other provision of the Constitution which either expressly, or by necessary implication denies the Legislature the power to classify property for the purpose of taxation; *Railway v.*

**2. SAME:** *Same.* *Worthen, 46 Ark., 330;* and that classification is not prohibited by the Federal Constitution, so long as the law operates equally and uniformly upon all property of like kind, is definitely settled by the Supreme Court of the United States. *State Railroad Tax Cases, 92 U. S., 801; Cummings v. Bank, 101 ib., 100; Kentucky Railroad Cases, 115 ib., 321.*

**3-6. SAME:** *Same: Assessment of railways.* From the peculiar nature of railroad property, its dissimilarity in use and value from the mass of other property, and its continuous extent through different localities, it is commonly regarded by the States that it cannot, in justice to the owners, be as fairly and uniformly valued by the numerous local instrumentalities provided for assessing other property, as by a State board created for the purpose. The industry of the Attorney General has furnished us references to the statutes of a large number of States showing that the practice of assessment of railways as units by State boards is almost universal.

In considering a statute of the State of Kentucky, which pursued this system, the Supreme Court of the United States, in the case cited, says: "There is nothing in the Constitution of Kentucky that requires taxes to be levied by a uniform method upon all descriptions of property. The whole matter is left to the discretion of the legislative power, and there is nothing to forbid the classification of property for purposes of taxation, and the valuation of different classes by different methods. The rule of equality in respect to the subject, only

requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances. There is no objection, therefore, to the discrimination made as between railroad companies and other corporations in the method and instrumentalities by which the value of their property is ascertained. The different nature and uses of their property justify the discrimination, in this respect, which the discretion of the Legislature has seen fit to impose."

In a like case in California it was said: "The Constitution of the State requires all property to be assessed at its actual value. We are unable to see how the fact that the value of one kind of property is to be ascertained by one officer or board, and the value of another kind of property by another officer or board—each clothed with the duty and responsibility of ascertaining the actual value—can be held to operate a deprivation of legal protection to the owners of either kind of property. The State board in the one case, the Assessors and county boards in the other, are but different instrumentalities through which the same result is reached; the fair and just valuation by reference to the same standard, and, therefore, the equal and uniform valuation of property for purposes of taxation." Authorities might be multiplied to the same effect.

The objection of the railways to be placed in a class to be dealt with separately by the Legislature is thus seen to be without foundation or authority. But the power thus to classify makes it competent for the Legislature to provide the periods for the assessment of each class, as well as the mode. It is competent to provide that one kind of property shall be assessed every year, while the requirement reaches another only once in two years. Such a distinction between real and personal property is made without objection; but the difference between a railway with its equipments and real estate is perhaps not greater than between real estate and some species of personalty. The fact that this statute denominates railway

tracks as real estate, does not obliterate the difference between them and ordinary farm lands, any more than it would in fact convert railroads into personalty to call them so, as was done for the purpose of taxation by the Acts of 1871 and 1879. *Acts 1871, p. 135; Acts 1879, p. 40.* The nature of the property justifies classification and separation from the body of the real estate upon the grounds that justify the separate classification of realty and personalty. The requirement of an annual assessment of railways affords, therefore, no greater cause for complaint than does the like requirement for personal property, and the complaint of discrimination is groundless. *Railroad v. Board of Supervisors, 67 Iowa, 199.*

7. SAME: Same. More baseless than either of these objections is the argument that the company's property is taken without due process of law because no notice is given the company and no opportunity to be heard before the assessment becomes fixed. The time and place for the meeting of the board is fixed by the statute and notice by statute is practically sufficient, and all that can be required in such proceedings. *Pulaski Equalization Board Cases, 49 Ark., 518.* As was said in the *State Railroad Tax Cases, 92 U. S., supra:* " This board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right or redress a wrong; and in the business of assessing taxes, this is all that can be reasonably asked."

8. SAME: Same. The objection urged here to the failure to provide for an appeal from the valuation fixed by the State board, was disposed of in the Kentucky Railroad Tax Cases, cited above, and what is there said of the relative rights of the owners o railways, and of the owners of other property, and of the power of the tribunals which fix the values of the several classes of property for taxation, is so nearly applicable under the laws of this State, that we quote the language as disposing of the question. " The final point of objection seems to be reduced to this. In the case of ordinary real estate it is

said, when the Assessor has made his valuation, it is submitted to a board of supervisors, who may change the valuation, but not so as to increase it without notice to the tax-payer, and an opportunity for a formal hearing, upon testimony to be adduced under oath, and with a right of appeal on his part, first to a County Judge, and again, if the amount of the 'tax is equal to fifty dollars, to the Circuit Court. This is contrasted with the proceedings in the case of railroad property before the board of railroad commissioners, in which it is alleged there is no notice of an intended ·change in the valuation returned by the company, and no appeal allowed if it is increased.

" The discrimination, however, is apparent rather than real. An examination of the statutes shows, that the original valuation of the Assessor, in case of ordinary real estate, is conclusive upon the tax-payer, no matter how unsatisfactory; and the appeal allowed is only from the action of the board of supervisors, in case they undertake to increase the valuation made by the Assessor. But in the case of railroad property no board has the authority to increase the original assessment made by the railroad commissioners, and there is, therefore, no case for an appeal similar to that of the owner of ordinary real estate.

"But were it otherwise, the objection would not be tenable. We have already decided that the mode of valuing railroad property for taxation under this statute is due process of law. That being so, the provision securing the equal protection of the laws, does not require in any case, an appeal, although it may be allowed in respect to other persons, differerently situated. This was expressly decided by this court in the case of *Missouri v. Lewis, 101 U. S., 22, 30.* It was there said by Mr. Justice Bradley, delivering the opinion of the court and speaking to this point, that 'the last restriction, as to the legal protection of the laws, is not violated by any diversity in the jurisdiction of the several courts as to the sub-

ject matter, amount, or finality of decision, if all persons within the territorial limits of their respective jurisdictions have an equal right, in like cases and under like circumstances, to resort to them for redress.' The right to classify railroad property as a separate class, for purposes of taxation, grows out of the inherent nature of the property, and the discretion vested by the Constitution of the State in its Legislature, necessarily involves the right, on its part, to devise and carry into effect a distinct scheme, with different tribunals in the proceeding to value it. If such a scheme is due process of law, the details in which it differs from the mode of valuing other descriptions and classes of property cannot be considered as a denial of the equal protection of the laws."

The provision contained in the Kentucky act for the enforcement of the tax by proceeding in an ordinary court of justice, does not alter the case as to the questions presented, for in such proceedings the valuation fixed by the board is conclusive in the absence of a statutory provision authorizing inquiry into their finding, and it could not be assailed unless for fraud or want of jurisdiction (*Ry. v. Stockey, 119 Ill., 182*) —grounds upon which the court of equity could have acted in this case as readily as could the Kentucky tribunal in the case instanced. *Ry. v. Donohoe, 122 Ill., 27; Ry. v. People, ib., 506.*

9. SAME: Same. Much complaint is made in the abstract and brief of appellant over the fact that having the same mileage in 1885 and 1886, the board nearly doubled the assessment of the former year in the latter. No fraud is charged; and it is notable in this case, as in those of the individuals who complained in the cases reported in *49 Ark., 518*, that the board of equalization had greatly increased their assessment, that there is not even a charge of over-valuation of property. The only inference to be deduced from the increase in the assessment, standing alone, as was said in the case of *The Railroad v. The People, 122 Ill., supra*, would be that the assessment for the first year

was too low or that the property had since increased in value, or that both facts existed.

A mere discrepancy in judgment, however, between the members of the board and the Chancellor to whom the application may be made for injunction, would not warrant interference on the part of the latter.

The Chancellor was right in declining to interfere with the collection of the taxes, and the decree is affirmed.