CASE 42.—APPEAL BY THE BOARD OF EQUALIZATION OF CAMPBELL COUNTY AGAINST THE LOUIS-VILLE & NASHVILLE R. R. Co.—April 15, 1908.

# Board of Equalization of Campbell County v. L. & N. R. R. Co.

## Appeal from Campbell Circuit Court.

From the judgment rendered in the Campbell Circuit Court the Board of Equalization of Campbell county appeals.—Affirmed.

1. Taxation—Railroads—"Railroad Property."—Const. 1891, section 182, declares that nothing in the Constitution shall prevent the General Assembly from providing by law how railroads and railroad property shall be assessed, and how taxes thereon shall be collected. Held, that where a bridge was owned and used by a railroad company, it constituted "railroad property" within such section, though it was also used for the accommodation of teams, street cars, and foot passengers.

2. Same—Vacation of Tax—Issues.—Whether a railroad company was entitled to own and maintain a bridge used not only for its trains, but also for pedestrians, street cars, and a wagonway, could not be determined on an appeal from an assessment of such bridge to the railroad company by a county board of equalization, instead of by the State Railroad Commission.

3. Same—Railroad Property—Assessment—Power to Make.—1 Acts 1877-78, p. 82, c. 764, required the assessment of railroad property by a state board of equalization, which power was vested in a railroad commission by Act April 19, 1882, (Laws 1881-82, p. 66, c. 790). Const. 1891, section 182, provides that nothing therein contained shall prevent the General Assembly from providing by law how railroad property shall be assessed, and, until otherwise provided, the present law on the subject shall remain in force, and Acts 1906, p. 139, c. 22, requires the president and chief officer of every railroad company and all railroad bridge companies

owning or operating a bridge spanning a river constituting the boundary of the state, to return to the Auditor of Public Accounts the total length of the railroad, including the length thereof beyond the limits of the state. Held, that where a railroad owned and maintained a bridge as a part of its railroad system, such bridge was assessable for taxation by the Railroad Commission, and not by the local authorities of the county in which it was located.

JOHN W. HEUVER and BRENT SPENCE for appellant.

H. L. STONE, C. H. MOORMAN and BENJAMIN D. WAR-FIELD, for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

The question involved on this appeal is, whether or not the bridge formerly owned by the Newport & Cincinnati Bridge Company, but now the property of appellee by virtue of a conveyance executed by the former to the latter on July 26th, 1904, should be assessed for taxation by the railroad commission or by the local authorities in Campbell county.

The property in question was assessed by the board of equalization of Campbell county at $1,500,000.00. From this action of the board an appeal was taken by the Louisville & Nashville Railroad Company to the county court. There it was adjudged that the assessment was invalid, and that the same be stricken from the assessment book. From that judgment an appeal was prosecuted to the circuit court of Campbell county. There it was adjudged that, at the time of making the assessment, there was no power in the board of equalization, or in the county assessor, to assess the property in question, and that at said time all such power was in the railroad commission and not elsewhere. The judgment further directed that the assessment be stricken from the assessor's book,

and that the sheriff of Campbell county collect no taxes thereon. From this judgment the board of equalization of Campbell county prosecutes this appeal.

For a number of years prior to the adoption of the present constitution, it was the settled policy of this state that railroad property should be assessed as an entirety. By an act of 1864 the railroads were assessed at $20,000 per mile, and were required to pay annually the same rate of tax on that assessment as was levied by law on real estate. In the case of Applegate v. Ernst, 3 Bush 648, the court held that fragmentary taxation of railroads would be unjust, injurious, and contrary to public policy, and that, under the above act, they were taxable for State revenue and were not a fit subject for local taxation. By an amended act, of March 17th, 1876 (1 Acts 1876, page 78), local taxation of railroads was authorized, and the assessment thereof by local assessors was provided for. Evidently this method of assessment was soon found to be unsatisfactory, for by an act of April 3rd, 1878 (1 Acts 1878, p. 82), it was provided that the assessment of railroad property, whether for State, county or other purposes, should be made by a board of equalization appointed by the Governor for that purpose. By an act of April 19th, 1882 (1 Acts 1881-1882, p. 66), the power of assessment was vested in a railroad commission.

In the case of C., N. O. & T. P. Ry. Co. v. Commonwealth, 81 Ky. 492, this court gives the reason why railroad property should not be assessed by the local officers of each county, but should be assessed by a central board, and in the opinion it is said:

"The principle object of the Legislature in having this board of commissioners to assess and supervise the taxing of such corporations was, that no injustice might be done the companies by subjecting their property to fragmentary assessments, subject to the revision of the supervising board of each county through which the road might run. Fragmentary taxation of the same line of road by a dozen or more different assessors would scarcely produce that uniformity in assessment so absolutely essential to produce equality in taxation, and the legislative purpose was to obviate such an objection and have a uniform assessment of this class of property, and no wiser suggestion could have been well made than to place the valuation in the hands of intelligent free-holders, to be selected by the executive of the State, thus removing the question of value from local influences and prejudices that often result in imposing upon such corporations oppressive burdens."

Thus it will be seen that, at the time of the adoption of the present constitution in 1891, it was the settled policy of the State that local taxation of railroads should be based entirely upon the assessment made by the railroad commission.

Section 182 of the Constitution adopted in 1891 is as follows: "Nothing in this constitution shall be construed to prevent the General Assembly for providing, by law, how railroads and railroad property shall be assessed and how taxes thereon shall be collected. And, until otherwise provided, the present law on said subject shall remain in force." Thus it will be seen that the framers of the constitution recognized the propriety of providing that railroad property should be assessed in a manner different from the assessment of property generally. Prior to the adop-

tion of the present constitution, it was differently assessed, and by the section above referred to, the power was expressly given to the General Assembly to provide, by law, how railroads and railroad property should be assessed; and it was further provided that the law then in force should remain until it should be changed by the Legislature. Since that time the Legislature, instead of changing the system, has practically continued it in force, and such continuation has been repeatedly recognized and enforced by this court. (Louisville & Nashville Railroad Co. v. City of Louisville, 16 Ky. Law Rep. 796; Commonwealth, By, &c. v. Union R. T. Co., 26 Ky. Law Rep. 23.)

By the act of March 16th, 1906 (Acts of 1906, p. 139), it is provided that "the president or chief officer of each railroad company, or other corporation owning or operating a railroad line, in whole or in part, in this State, and all railroad bridge companies owning or operating the bridge spanning a river constituting the boundary of this State shall, on or before the first of August in each year, return to the auditor of public accounts of the State, under oath, the total length of such railroad, including the length thereof beyond the limits of the State," etc., etc. Counsel for appellant insist that this act does not place the power of the railroad commission to assess for taxation the bridge in question. It is unnecessary to determine whether or not the expression "all railroad bridge companies" includes the bridge of appellee. The record shows that the bridge in question was conveyed to appellee in the year 1904, and is now the property of appellee. By the acts in force prior to the act of 1906, all railroad property was subject to taxation by this State, and the assess-

ment thereof was to be fixed by the railroad commission alone. It was not intended that any property belonging to a railroad company should be exempt from taxation. In our opinion, therefore, the bridge in question, being owned by appellee, was taxable even prior to the act of 1906; and being taxable as railroad property, it was proper that the assessment thereof be made by the railroad commission.

It is contended by counsel for appellant that, under section 181 of the Constitution, the Legislature can not vest in the railroad commission power to assess for taxation property not strictly "railroad property," as that section provides that "the General Assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes;" it being argued that it is clear by this language that the power is constitutionally vested in the local authorities, and can not be placed elsewhere, the only question being in regard to railroads and railroad property; and it is insisted that "railroad property," within the meaning of this constitutional provision, is only such property as is necessarily incident to the operation of a railroad. In this connection, our attention is called to the fact that the bridge in question is used not only for the purpose of accommodating the trains of appellee, but that it has two tracks upon which street cars run; also a wagonway and paths for foot passengers. In the first place, we may say that the construction placed upon section 181 by counsel for appellant is not the one adopted by this court. In the case of South Covington & Cincinnati Street Railway Co. v. Town of Bellevue, 105 Ky. 283, this court

said: "The fallacy of this argument lies in the mean-
ing given to the word 'assess.' In the place used, it
means to levy a tax, and does not mean the valua-
tion of property for taxation. That the constitution
makers did not intend to forbid the valuation of
property for local taxation by the State board is
apparent from their continuing in force that method
of valuation of railroads for taxation, and which is
now in force." Again, the power of the Legislature
to vest the State board with power to assess tan-
gible property for local taxation by counties, cities,
towns, and taxing districts was upheld in City of
Louisville v. Louisville Public Warehouse Co., 107
Ky. 184. In that case, this court held that the city
assessor of Louisville had no power to assess dis-
tilled spirits in bonded warehouses, but that the
assessment of such property must be made by the
State Board of Valuation and Assessment, not only
for state, but county, city, town and district taxation.

From these authorities it will be seen that the
power of the Legislature to vest in a State board the
authority to assess either tangible or intangible
property for local taxation is no longer an open
question. Furthermore, the fact that the bridge
in question is used for other than railroad purposes
does not make it any the less "railroad property."
So long as the railroad is permitted to, and does,
own the bridge, it should be taxed as any other rail-
road property. It is suggested that, under section
192 of the Constitution and section 567 of the Ken-
tucky Statutes, the appellee has no power to own
or operate a structure of this character. It does not
appear from the record, however, that by owning
and operating the bridge in question the appellee
has engaged in a business other than that expressly

authorized by its charter or the law under which it was organized, nor that it holds any real estate except such as is proper for carrying on its legitimate business; nor does it appear that the bridge has been owned by appellee for a longer period than five years; nor is there anything in the record to indicate what appellee's charter rights are with respect to owning or operating a bridge of this character. Furthermore, we could not determine in this proceeding the question, whether or not appellee has the right to own and maintain a bridge of the character of the one in question.

Counsel for appellant cite several cases in support of the position that a bridge like the one under discussion is not "railroad property," and should not, therefore, be assessed by the Railroad Commissioner; among them, the cases of St. Louis & S. V. Ry. Co. v. Williams (Ark.), 13 S. W. 796; St. Joseph & G. I. R. Co. v. Devereux, Sheriff, 41 Fed. Rep. 14; Chicago & Alton R. Co. v. People, Ex Rel., 29 L. R. A. 69; State v. Mississippi River Bridge Co., 19 S. W. 421, and Cass County v. Chicago B. & Q. R. Co., 41 N. W. 246.

In the case of St. Louis & S. V. Ry. Co. v. Williams, supra, it was contended that the bridge in question should be assessed for taxation to the appellant railway, on the theory that it was used by said railway. In the opinion the question is thus stated: "The question is, does the railway own or operate the bridge as a part of its road, or is it owned or operated independently?" In passing upon this point, the court said: "There is nothing to show that the railway company is the substantial owner of the bridge by reason of owning the stock, and the case is therefore unlike that of State v. Depot

Company, 43 N. W. Rep. 840, which the appellant relies upon.''

In the case of St. Joseph & G. I. R. Co. v. Devereux, Sheriff, supra, it does not appear how the bridge was acquired by the appellant, whether by purchase or by acquisition of all its stock. The court, in holding the bridge subject to taxation, said: ''It is a costly structure, used for purposes of general travel; and the fact that the railroad company has its rails upon it and runs its cars across it does not destroy its character as an independent structure.''

In the case of Chicago & Alton R. Co. v. People, Ex Rel., supra, appellant claimed the right to assess as railroad property a bridge. Its claim of ownership of this property was based on a lease. The lease was forever, provided the lessee should keep and perform its terms and conditions, but if it failed the lessor had the right to re-enter and take possession of the property. The decision turned on the ownership of the property. The court said: ''Whether objector had the right to demand that the assessment should be against it as for railroad property, in our view of the case, depends upon the ownership of the property. If the railroad company was the owner, it could not be lawfully assessed under section 1, chapter 120, supra, but only by the State Board of Equalization as railroad track.'' And, again, in holding the property subject to local taxation, the court said: ''Either from necessity or of its own volition, appellant has never become the absolute owner of the property, but has left the real title to the same in the Mississippi Bridge Company, and it is therefore subject to taxation against the latter by the township assessor of the town in which it is located.''

In the case of State v. Mississippi River Bridge Company, supra, it was held that "a railroad bridge may lawfully be segregated, for the purposes of taxation, from a railway line in connection with which it is used, where its ownership is separate from the railway.'" It was held that the bridge should be taxed to the bridge company, as the legal title was in that company. In the opinion it is said: "It is clear, from this statement of the substance of the instrument, that, notwithstanding the long term of tenancy may normally endure, the paramount title remains in the bridge company. The lease is subject to a defeasance, in event of any failure on the part of the lessee, to meet all its requirements, and its entire scope and effect exclude the notion of any attempt at a transfer of the title outright. This view of it results in the ruling that the property is yet 'owned' by the bridge company, within the meaning of the section for the taxation."

The cases of Cass County v. Chicago B. & Q. R. Co., 41 N. W. 246, and Chicago B. & Q. R. Co. v. School District No. 1, Id. 249, held that the Nebraska statute does not require the return to the State board of a bridge constructed across the Missouri River; that said river being a navigable stream, the right to bridge it can be obtained only by law of Congress and not by authority from the State. The opinions hold that such bridges, when constructed, are not parts of the road-beds or superstructures. It is also held that such bridges are not assessable by the State Board of Equalization, for the reason that section 40 of the Nebraska Statutes specifically declares that said board, in making their assessment and valuation, "shall not assess the value of any machine or repair shop, or general office buildings,

storehouses, or any real or personal property, situated outside of the right of way or depot grounds of such company.'' The court held that this exception to the general law excluded the bridge property from assessment by the State Board of Equalization and Assessment.

It will be seen, therefore, that these cases are different from the case under consideration in that the language defining the character of property assessable by the State board, as well as the statutory exceptions thereto, are not similar to ours.

By the decided weight of authority, we think the whole question depends upon the ownership of the bridge in question. If it be railroad property used in connection with the operation of a railroad, it is then assessable by the Railroad Commission. The fact that a portion of the bridge may be used for other than railroad purposes does not, we think, give the right to the local officers of the county to assess the same.

For the foregoing reasons the judgment is affirmed.