# THE STATE ex rel. JOHN A. PEARSON v. LOUISIANA & MISSOURI RIVER RAILROAD COMPANY and CHICAGO & ALTON RAILROAD COMPANY, Appellants.

## Division One, December 23, 1908.

1. **TAXATION: Railroad Bridge: Assessment.** A railroad bridge, which was an integral part of the railroad, as the evidence shows the bridge in question in this case to be, was not taxable as separate property for the taxes of 1897.

2. ———: ———: ———: **Double Taxation.** Where the State Board of Equalization assessed the railroad bridge for the taxes for the year 1901 as an integral part of the railroad line, under and by authority of the statutes, and the railroad company paid the taxes so assessed, separate taxes assessed against the bridge as a separate structure are not collectible. Double taxation is not permitted.

3. ———: ———: **Toll Bridges: Intrastate and Interstate Bridges.** The statute of 1899 (Sec. 9387, R. S. 1899) makes no distinction, in attempting to define toll bridges, between intrastate and interstate bridges. It does not mean that all bridges over streams dividing this State from another State shall be subject to separate taxation, and only bridges over navigable streams within the State which charge a toll for crossing the same shall be so taxed.

4. ———: ———: ———: ———: **Grammatical Construction.** The grammatical rule of interpretation of a statute should be considered and applied along with other rules of construction where there is no conflict between them. The main provisions of section 9387, Revised Statutes 1899, are: "All bridges over streams dividing this State from other States, and all bridges across or over navigable streams within this State, where the charge is made for crossing the same, shall be subject to taxation," etc. *Held*, that the clause "where the charge is made for crossing the same" modifies both the preceding clauses, and applies to both classes of bridges alike. That is shown by the punctuation, and no other grammatical construction would be allowable.

5. ———: ———: ———: ———: **Reasonable Construction.** Uncertain and ambiguous words of a statute should always be construed, if possible, to produce a reasonable and just result. To hold that the clause in section 9387, Revised Statutes 1899, namely, "Where the charge is made for crossing the same," refers only to bridges over streams within the State

would be to make an unjust and unreasonable discrimination between interstate and intrastate bridges, and to hold that all interstate bridges are taxable and only such intrastate bridges as are toll bridges are taxable.

6. ———: ———: ———: ———: **In Interest of Validity.** Where the language of a statute is susceptible of two interpretations, one of which upholds its validity and the result of the other would be to declare it unconstitutional and void, that interpretation which upholds its validity will be adopted.

7. ———: ———: **Illegal Charges Not Tolls.** A charge by a railroad company of more money per mile for carrying passengers across an interstate bridge that is an integral part of its line than is charged elsewhere along the line, does not make the bridge a toll bridge, but such charges are illegal and extortions. If the bridge is an integral part of the railroad line the company has no legal right to collect tolls, or to charge a greater mileage for carrying passengers across it than it charges for carrying them over other parts of the road.

8. ———: ———: **Louisiana Bridge: Not Toll Bridge.** The Chicago & Alton railroad bridge across the Mississippi River at Louisiana, is not a toll bridge, but being an integral part of the railroad line, and being included in the tax assessment of the railroad line and properties as a part thereof, is not subject to separate taxation as a separate structure, under section 9387, Revised Statutes 1899.

9. ———: ———: **Assessment by Mileage Rule.** An assessment of a railroad bridge by the "mileage rule" as an integral part of the entire roadway in the State is not unjust because it deprives the county in which it is situated of the benefit of all taxes arising from its proper valuation. That valuation, according to that rule, is added to the per-mileage assessment of the whole line within the State, and distributed among the counties through which the road runs according to the number of miles in each, and that is not unjust.

10. ———: ———: ———: **Just Assessment.** From the standpoint of absolute justice all non-toll railroad bridges should not be considered at all in fixing the value of railroads for taxation purposes, whatever their size or cost of construction, except in so far as they constitute so many feet or miles of the road to be assessed. They have not so much intrinsic or commercial value as the same length of road in a level country.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,*
Judge.

REVERSED.

*Scarritt, Scarritt & Jones* for appellants.

(1) The second count for the taxes for 1897 is disposed of by the decision of this court in State ex rel. v. Railroad, 196 Mo. 523. (2) In 1899 the statute in question was amended, and as amended was carried forward into the revision of 1899 and designated as section 9387. The decision in the above-entitled cause is decisive of this case, and this bridge under the amended statute is not taxable as a separate structure because (1) it is an integral part of defendants' railroad and has already been taxed as such, and the amended statute, like the old statute, does not attempt to provide for double taxation, and (2) the amended statute does not attempt to tax as a separate structure any but toll bridges, and this bridge is not a toll bridge in the meaning of that statute. The clause "where the charge is made for crossing the same" applies to "bridges over streams dividing this State from another State," as well as to "bridges across or over navigable streams within this State." Endlich on Interp. of Stat., secs. 81, 414; Fisher v. Connard, 100 Pa. St. 63; Gyger's Estate, 65 Pa. St. 311; Eby's Appeal, 70 Pa. St. 311; In re Ah Tie, 13 Fed. 291; Plum v. Kansas City, 101 Mo. 533; St. Louis v. Lane, 110 Mo. 259; French v. Teschemaker, 24 Cal. 554. (3) A bridge across a stream between two States is an instrument of interstate commerce. Bridge Co. v. Kentucky, 154 U. S. 204; Leloup v. Mobile, 127 U. S. 640; Webber v. Virginia, 103 U. S. 351; Walling v. Michigan, 116 U. S. 457; State v. Furbush, 72 Me. 495; Welton v. Missouri, 91 U. S. 275. Respondent's construction of section 9387 and the classification of bridges contended for by him would be a discrimination against an interstate bridge in favor of an intrastate bridge, and would be putting a burden upon an instrument of commerce such as "amounts to a regulation of it, which belongs

solely to Congress.'' (4) The bridge in question is not a toll bridge within the meaning of section 9387, R. S. 1899. (a) It will be conceded that the owner of this bridge over the Mississippi river may not lawfully conduct the same as a toll bridge unless it is expressly authorized thereto by an act of Congress. Such rentals as are authorized and provided for in the act of Congress, 16 U. S. Statutes at Large, p. 473, are not tolls in the sense that the word is used in section 9387. State ex rel. v. Railroad, 97 Mo. 352. (b) There is no proof that tolls are exacted for crossing the bridge in question. (c) The claim of plaintiff that this is a toll bridge is based solely upon some testimony to the effect that the railroad fare charged by defendant company from Louisiana, Missouri, to Roodhouse, Illinois, and certain intermediate points, was greater than that charged between Louisiana and local points in Missouri, equally distant respectively from Louisiana. There is no proof that such excess tariff was toll for crossing the bridge in question. All the testimony upon this point was that it was not bridge toll. Plaintiff contends, however, that it was unlawful during the years in question for defendant company to charge more than three cents a mile between Louisiana and the Illinois points aforesaid; that the court must presume that the defendant was not breaking the law and therefore that the excess charge was toll across the bridge. There are several flaws in the plaintiff's logic. In the first place, it is not shown that it is lawful for the defendant company to charge a toll of twenty-five cents per person for crossing the bridge. It is not authorized by the bridge charter. In the second place it is not shown that a bridge toll was the only possible explanation compatible with law, of the excess railroad fare. The excess charges may be accounted for by mistake. Payne v. Railroad, 129 Mo. 420; Bigelow v. Railroad, 48 Mo. App. 367; U. S. v. Ross, 92 U. S. 283. (5) (a) The

bridge in question being an integral part of the railroad line is not taxable under section 9387, R. S. 99. State ex rel. v. Railroad, 97 Mo. 354; State ex rel. v. Railroad, 196 Mo. 523; State ex rel. v. Bridge Co., 109 Mo. 253.  (b)  The bridge in question is an integral part of defendants' railway line.  The evidence is clear, convincing and uncontradicted upon this point.  State ex rel. v. Railroad, 97 Mo. 348; Bridge Proprietors v. Hoboken Co., 1 Wall. 116; Railroad v. Supervisors, 48 Wis. 666; Anderson v. Railroad, 117 Ill. 26; Railroad v. City of Davenport, 51 Iowa 451.  Double taxation is unlawful, and is never presumed.  State ex rel. v. Pearson, 196 Mo. 523; Tennessee v. Whitworth, 117 U. S. 137.  (6)  Section 9387 does not authorize the tax in question upon the property described in the petition. It is alleged in each count of plaintiff's petition that the taxes in question were assessed and levied and are a lien upon the "real estate, roadbed, bridge and bridge property aforesaid" (said property being specifically described upon the second and third pages of each count of the petition).  That the whole property so described was assessed at a valuation of $150,000 and the petition prays that the whole of said property be impressed with the lien of said property and be sold to pay the same.  It was conclusively shown at the trial that the property described in the petition included the roadbed and right of way and defendants' real estate within the limits of the right of way for more than one-half mile west of the bridge itself. Railroad v. Apperson, 97 Mo. 308; Milner v. Shipley, 94 Mo. 106; Vaughan v. Daniels, 98 Mo. 234; State ex rel. v. Railroad, 114 Mo. 1.

*Ball & Sparrow, Pearson & Pearson, J. D. Hostetter* and *James W. Reynolds* for respondent.

(1)  Appellants contend that both classes of bridges mentioned in section 9387, R. S. 1899, must be toll bridges in order to be taxable as bridges.  In

other words, that the clause "where a charge is made for crossing the same" refers to both classes of bridges preceding it instead of only the last class mentioned, and bases its contention on the fact that the clause is separated from the clause preceding it by a comma. (a) Punctuation is not to be considered in the construction of statutes. State ex rel. v. St. Louis, 174 Mo. 144. The qualifying clause refers only to the last preceding class for the following reasons: (b) A limiting or qualifying clause, where no contrary intention appears, or where there is nothing in the subject-matter indicating the contrary, refers solely to the last preceding antecedent. Sutherland on Statutory Construction, sec. 267; Sedgwick on Construction of Statutes (2 Ed.), p. 226; State ex rel. v. St. Louis, 174 Mo. 142. (c) The phraseology is different from the old statute, sec. 7755, R. S. 1889. (d) The old statute requiring both classes of bridges to be toll bridges before they could be taxed, it was certainly the intention of the Legislature in this amendment to make such a change as would yield more revenue, and inasmuch as the elimination of the toll feature would increase the number of taxable bridges in the State, this must have been the object of its passage. Pembroke v. Huston, 180 Mo. 636; Springfield Grocery Co. v. Walton, 95 Mo. App. 533; Westerman v. K. of P., 196 Mo. 728; State ex rel. v. Swanger, 190 Mo. 576. (e) Appellant has difficulty in finding a reason for taxing bridges over streams dividing this State from another State and not taxing bridges in this State unless they make a charge for crossing. To the respondent it appears that this discrimination is just, wise and reasonable, for the reason that as a class the interstate bridges are larger and more valuable than the bridges in this State. (f) Reason and natural justice support respondent's contention. The authorities cited by appellant in this connection, to the effect that ambiguities in law should be resolved in favor of reason and

natural justice, might be cited by the respondent, for as we contend there would be certainly no reason or natural justice in $150,000 worth of property invested in the bridge in question escaping its just proportion of the tax burdens by the paying of taxes based on $8,000 valuation as contended in this case by the appellant. (g) If the foregoing propositions are true, it is not true, as contended by appellant, that the act in question is any discrimination against an instrument of interstate commerce. (2) Charges were made for crossing this bridge. If it be held, as contended by the appellant, that the clause "where a charge is made for crossing the same" refers also to bridges of this character, then the evidence in the record brings the bridge in this case within that definition. It stands not only undisputed but admitted in the record that a charge of practically twenty-five cents was made for each ticket sold to persons traveling over this bridge in addition to the three cent maximum passenger rate per mile, authorized by the statute of Illinois and Missouri. The record also shows it to be a misdemeanor to charge for railroad transportation a rate in excess of the maximum rate. It appearing of record that the defendant cannot account for the excess, otherwise than the passage over the bridge in question, we are justified in presuming that the extra charge of twenty-five cents, instead of being an excess in transportation rate in violation of the penal laws of the State of Illinois, is a charge for crossing that bridge. Payne v. Railroad, 129 Mo. 420. Tillery v. Railroad, 97 Mo. 348, is not in point. (3) This tax would not result in a double taxation, as appellant assumes. There was some evidence in the case to the effect that the appellant's mileage on which it paid taxes included this bridge, but the trial court, after hearing all this testimony, affirmatively finds against appellant on this point by finding that the taxes on this bridge for the years in question "are due, delinquent and unpaid."

This court will not disturb the finding of the trial court on this point, even if it be conceded there is no evidence in the record to the contrary. Bank v. Bennett, 114 Mo. App. 696. (4) Bridge not taxable, as only part of the roadbed. Sec. 9387, R. S. 1899; St. Louis v. Lane, 110 Mo. 254.

WOODSON, J.—The collector of revenues of Pike county instituted this suit against the defendants to collect taxes levied against the railroad bridge over the Mississippi river at Louisiana, Missouri, for the years 1897 to 1901, both inclusive, as a structure separate and apart from the railroad.

The petition was in five counts, one for each year's taxes so levied. The first, third and fourth counts were dismissed, and a trial was had upon the second and fifth, being for the taxes for the years 1897 and 1901, respectively, which resulted in a judgment in favor of plaintiff, and defendants duly appealed to this court.

The facts regarding the second count of the petition are substantially the same as were those involved in the case of State ex rel. v. Railroad, 196 Mo. 523, except the taxes were assessed for a different year, and the same is true as regards the fifth count, excepting the taxes therein mentioned were assessed under section 7755, Revised Statutes 1889, as amended by section 1 of the Laws of 1899, page 327, the same being section 9387, Revised Statutes 1899. Reference is made to that case for a full statement of the facts of this case.

I. If we correctly understand respondent's first contention, it is that the bridge in question is a separate and independent structure from the railroad track and is not an integral part of the railroad line. We have carefully read this record and have found no evidence which would warrant us in so holding, but,

upon the contrary, we are clearly of the opinion that the bridge in question constitutes an integral part of defendants' railroad line or track.

This same question was before this court in the case of State ex rel. v. Railroads, 196 Mo. 523, and it was there held that this same bridge was not a separate structure but was an integral part of the road, and was not taxable as separate property. And since the taxes sued for in the second count of the petition were levied under the law as it stood when that case was decided, the conclusions reached therein are decisive of said second count of the petition in this case; and we, therefore, hold respondent is not entitled to recover thereon.

As regards the fifth count, that being the only remaining count in the petition, we desire to state that the State Board of Equalization assessed the bridge in question for the year 1901 as an integral part of the railroad line, under and by authority of sections 9338 and 9339, Revised Statutes 1899, in the same manner that it was assessed in the case before cited, and that appellant has paid the taxes so assessed; and, as before stated, this is a suit to recover taxes assessed against the bridge as a separate structure for the same year, which, if permitted, would be double taxation, which is not favored by the law, and it should never be presumed that the Legislature so intended in the absence of enactments to the contrary. [State ex rel. v. Railroads, supra, l. c. 535; Tennessee v. Whitworth, 117 U. S. l. c. 137.]

II. It is virtually conceded by counsel for respondent that under the ruling of this court in the case of State ex rel. v. Railroads, supra, the taxes involved in the fifth count of the petition were improperly levied and are not collectible without said section 7755, Revised Statutes 1889, has been so amended and

changed from what it was when that decision was rendered as to authorize the levy in question.

They contend that section 9387, Revised Statutes 1899, the section under which this suit was instituted, was made to change the law from what it was declared to be in the decision in the above-named case, and that under the present law a bridge of this character does not have to be a toll bridge to make it taxable separately. They further insist that the record in this case shows the bridge in question to come clearly within the provisions of the present law and is a taxable bridge.

Appellants contend that the decision in the above-entitled cause is decisive of this case, and that this bridge under the amended statute is not taxable as a separate structure because (1) it is an integral part of defendants' railroad and has already been taxed as such, and the amended statute, like the old statute, does not attempt to provide for double taxation, and (2) the amended statute does not attempt to tax as a separate structure any but toll bridges and that this bridge is not a toll bridge in the meaning of that statute. Those contentions present the vital legal propositions involved in this litigation, and call for a consideration of the two sections mentioned.

In so far as it is material to the question involved in this case, section 7755 reads as follows: "All bridges over streams in this State, or over streams dividing this State from other States, owned by joint stock companies, and all such bridges where a toll is charged for crossing the same, which are now constructed, which are in the course of construction or which shall hereafter be constructed, . . . shall be subject to taxation for State, county, municipal and other local purposes, to the same extent as the property of private persons, and taxes levied thereon shall be levied and collected in the manner as is now or may hereafter

be provided by law for the taxation of railroad property in this State," etc.

And said section 9387 reads as follows: "All bridges over streams dividing this State from any other State, owned, controlled, managed or leased by any person, corporation, railroad company or joint stock company, and all bridges across or over navigable streams within this State, where the charge is made for crossing the same, which are now constructed, which are in the course of construction, or which shall hereafter be constructed, . . . shall be subject to taxation for State, county, municipal and other local purposes to the same extent as the property of private persons," etc.

If we strip section 9387 of all immaterial words and reduce it to its smallest possible compass, it would then read as follows: "All bridges over streams dividing this State from any other State, and all bridges across or over navigable streams within this State, where the charge is made for crossing the same, shall be subject to taxation," etc.

The first clause of the section clearly refers to bridges over rivers separating this State from any other State; and the second clause refers with equal clearness to bridges crossing rivers within this State, and so far there is no controversy between the counsel for the respective parties, but respondent contends that the following words of the section—"where the charge is made for crossing the same, shall be subject to taxation," etc.—apply only to the second class or intrastate bridges and have no application to the first class or interstate bridges.

We are unable to lend our concurrence to that contention.

In the first place, that is not the grammatical construction of the section, for the reason that the words of the section defining the two classes of bridges are

separated only by a comma, and the words thereof which limit the bridges to be taxed, namely, "where the charge is made for crossing the same," are separated from the second class of bridges by a comma also, thereby showing the close relation existing between the two classes of bridges, which are the subjects of the legislation, and that the predicate applies to both antecedents and not to the second class only. Had the lawmakers intended that those words should apply to the second class only the two classes would have been separated by a semicolon, and the comma separating the second class from the words providing what bridges should be taxed would have been omitted, and the section would then have read as follows: "All bridges over streams dividing this State from any other State; and all bridges across or over navigable streams within this State where the charge is made for crossing the same shall be subject to taxation," etc.

By so punctuating the section the two classes of bridges are distinctly separated by the semicolon, and by omitting the comma between the second class and the predicate, that is, the words "where the charge is made," etc., would close up the break and leave no separation whatever between the words defining the second class and the words providing what bridges should be taxed, thereby clearly indicating according to the grammatical construction that the latter words applied to the second class of bridges only, and not to both.

Counsel for respondent contend, and cite respectable authority in support thereof, that the grammatical construction of a statute does not necessarily show the real and true meaning thereof. That proposition is not denied by counsel for appellants, but they insist, and correctly so, that the grammatical rule of interpretation should be considered and applied along with other rules of construction when there is no

conflict between them, and thereby give full force and effect to all. Many courts of last resort have so held.

A similar statute in construction came before the Supreme Court of Pennsylvania in the case of Fisher v. Connard, 100 Pa. St. 63, for interpretation. In that case the court was construing an act preserving from discharge under a judicial sale the lien of a mortgage prior to all other liens "except other mortgages, ground rents, purchase money due the commonwealth, taxes, charges, assessments and municipal claims, whose lien, though afterwards accruing, has, by law, priority given it." In the opinion the court say: "It was argued with much learning and ability by the counsel for defendant in error that the proper antecedent of the word 'lien' is 'municipal claims,' and that it is to such claims only that the words 'whose lien though afterwards accruing has by law priority given it,' applies. The effect of this construction, if adopted, would be to lift 'taxes, charges and assessments' out of the operation of the subsequent qualification, and place them upon the same plane with prior 'mortgages, ground rents, and purchase money due the commonwealth.' The grammatical construction of a statute is one mode of interpretation. But it is not the only mode, and it is not always the true mode. We may assume that the draftsman of an act understood the rules of grammar, but it is not always safe to do so. . . . Our best judgment is that 'taxes, charges, assessments and municipal claims,' in the Act of 1867, were all intended as antecedents of the word 'lien,' and if this makes good law, the grammatical construction is not so important."

In the case of Gyger's Estate, 65 Pa. St. 311, the court construed an act which prescribed that the register should issue letters of administration to the widow, if any, or to such of the relations or kindred of the decedent as by law might be entitled to the res-

idue of the estate, etc., and then proceeded: ''or he may join with the widow in the administration such relation or kindred  .  .  .  as he shall judge will best administer the estate, preferring always, of those entitled, such as are in the nearest degree of consanguinity with the decedent,'' etc., it was held that the phrase ''preferring always,'' etc., applied not only to the joint administration with the widow, but also to cases where there was no widow, or where she renounced, i. e., to the first clause, as well as the second.

The cases last cited announce the rule of construction we have applied to the statute under consideration in this case.

And there is another well-settled rule of construction which is also applicable to this statute and which leads to the same conclusion, and that is, uncertain or ambiguous words of a statute should always be construed so as, if possible, to produce a reasonable and just result. [Plum v. Kansas City, 101 Mo. 1. c. 533; St. Louis v. Lane, 110 Mo. 1. c. 259; Lamar W. & E. L. Co. v. City of Lamar, 128 Mo. 188.] In applying this rule to the facts of this case suppose we assume that the bridges in question is a toll bridge within the meaning of the law, what justice or good reason can be suggested why the Legislature should tax toll bridges over navigable streams separating this State from other States and not tax the same kind of bridges which span such rivers within this State? Absolutely none that we are able to discover, and learned counsel have not attempted to point out any such reason. There would be no more justice or equity in that kind of a statute than there would be in a statute which provides that all farm lands bordering upon any navigable stream separating this State from any other States shall be subject to taxation, and that all such lands bordering upon navigable rivers within this State should not be subject to taxation. Such a statute would not only be unjust and inequitable, but would also be clearly un-

constitutional, null and void as violative of sections 3 and 4 of article 10 of the Constitution of 1875, which provides that "taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax," and that "all property subject to taxation shall be taxed in proportion to its value." Kansas City v. Whipple, 136 Mo. 475; City of Brookfield v. Tooey, 141 Mo. 619.]

And in this connection we might state another well-known rule of construction which supports appellants' interpretation of said section 9387, and that is, that where the language of a statute is dubious or uncertain and is susceptible of two interpretations, one of which upholds its validity and legality and the result of the other would be to declare it unconstitutional and void, the former interpretation which upholds its validity should be placed upon it.

According to all of these canons of construction we must hold that it was the intention of the Legislature to authorize the taxation of all toll bridges in this State, whether they span navigable rivers separating this State from other States or whether they cross navigable rivers within this State.

In oral argument counsel for respondent contended that the bridge in question was in fact a toll bridge within the meaning of section 9387, and that the evidence preserved in the record bore him out in that contention, and, consequently, insisted that the judgment was for the right party and should not be disturbed. Counsel for appellants, upon the other hand, while conceding a larger sum is charged for carrying persons from Louisiana, Missouri, to Roodhouse, Illinois, the bridge constituting a portion of the route, than is charged for carrying them the same number of miles either in Missouri or Illinois, still contends that said charge is not a toll within the meaning of section 9387.

Having reached the conclusion in this and other cases involving the taxes assessed against this bridge, that it is not a separate and independent structure but is an integral part of appellants' railroad, we must logically hold that said charges are not tolls within the meaning of that section of the statute, but are illegal extortions exacted from the traveling public. If the bridge is an integral part of the road, as is conceded by counsel for appellants, both in printed and oral arguments, and as we hold it to be, then appellants would have no more legal right to demand and receive an additional fare for carrying passengers across this bridge than they would for carrying them across a trestle or any other bridge along the route of their road. The two propositions are absolutely inconsistent with each other and cannot stand together for the obvious reason that before a person can collect tolls of others for crossing a toll bridge he must first have such a bridge for them to cross upon; and in this case, according to the conceded facts, appellants, within the meaning of the law, have no bridge upon which they could cross, only a roadbed and tracks—nothing more.

We must, therefore, hold that the bridge mentioned was not subject to taxation under said section 9387, and that the taxes sued for in the second and fifth counts of the petition were improperly levied and cannot be collected.

III. The final insistence of counsel for respondent is that if the bridge in question is to be assessed under sections 9338 and 9339, Revised Statutes 1899, according to what is known as the "mileage rule," and not under section 9387, as contended for by the appellants, then the bridge will be assessed for almost a nominal sum, namely $5,000; while, if assessed under the last section, the assessed value thereof would be $150,000, which would result in great injustice to the

respondent and practically exempt the bridge from taxation.

In our judgment that insistence is not sound, for, in the first place, when the bridge is treated as a part of the roadway, then the entire road is assessed according to the mileage rule, and the total value of the bridge is taken into consideration and constitutes one of the elements which go to make up the total assessable value of the road, and when the total value is divided by the number of miles the road is in length, the value of the bridge is equally distributed along the entire length of the road; and when the railroad company pays its taxes, each county through which it passes receives its proportional part thereof instead of paying the entire taxes assessed against it to the county in which the bridge is located.

In the second place, if we view the matter from a standpoint of absolute justice and equity, then all non-toll railroad bridges should not be considered at all in fixing the value of railroads for assessment purposes, whatever their size or cost of construction may have been, except in so far as they constitute so many feet or miles of the road to be assessed. Such bridges have no more intrinsic or commercial value than the same number of feet of road constructed by it over a perfectly level prairie country and where the cost of construction was perhaps not more than one-thousandth part as much as was the cost of constructing the bridge. In fact, it is not so valuable as the latter, for several reasons: (1) there is not so much idle money tied up in the latter; (2) the expenses of maintaining the latter are not near so great; (3) the trains can run faster over the latter and much safer than over the former; and (4) the company has no legal right to charge any more for carrying freight and passengers over the bridge than it has for carrying them the same distance over the perfectly level portion of their road. Under the law of this State the cost of constructing

and maintaining railroads is not taken into consideration in fixing the tariffs the companies may charge for the transportation of freight and passengers over their lines—that is, no railroad of the same class can lawfully charge higher tariffs than the legal schedule, even though its cost of construction may have been double the cost of the construction of some other road of the same class; and that being true, why should the bridge be assessed at a higher value per foot or mile than any other portion of the road? We are unable to see any sound reasons therefor. That, however, is a matter over which we have no control—it belongs to the lawmaking power of the State and not to the judiciary.

It must follow from the foregoing rulings that the judgment of the circuit court as to the second and fifth counts of the petition must be reversed. It is so ordered.

All concur.