ARKANSAS TAX COMMISSION *v.* CRITTENDEN COUNTY.

Opinion delivered April 27, 1931.

*Hal L. Norwood,* Attorney General, and *Walter L. Pope,* Assistant, for appellant.

*A. B. Shafer,* for appellee.

HART, C. J., (after stating the facts). This appeal involves the correctness of the assessment made by the Arkansas Tax Commission of the railroad of the St. Louis-San Francisco Railway Company, which is an interstate railroad, having a part of its line in the State of Arkansas. Prior to the year 1929, said railway company used a bridge crossing the Mississippi River from the Arkansas side to Memphis, belonging to the Kansas City & Memphis Railway &. Bridge Company. While belonging to said bridge company, the Arkansas Tax Commission assessed the taxes to said bridge company. On September 1, 1929, said bridge company having sold the bridge to said St. Louis-San Francisco Railway Company, the Arkansas Tax Commission assessed it as a part of the line of railroad of said railway company, and there has been no separate assessment of the bridge to said bridge company or to said railway company. The question in the case is whether said bridge across the Mississippi River can be separated from the balance of the line of railway of the St. Louis-San Francisco Railway Company and separately assessed for the purpose of taxation and subjected to a different tax rate. In making the assessment of the property of said railway company, the Arkansas Tax Commission followed what it conceived to be the requirements of act 129 of the Acts of 1927, and adopted the general rule of assessing railroad property as a unit substantially as it had heretofore been followed in this State.

· Section 5, article 16, of the Constitution of 1874 provides that the value of property for taxation shall be ascertained in such manner as the General Assembly shall direct, making the assessment equal and uniform. By article 17, § 1, of the Constitution, all railroads are declared to be public highways, but the public are entitled to use them upon the condition of paying toll.

744

The Legislature is not allowed to discriminate between different classes of property in the imposition of taxes. The only discrimination with which it is vested is in the ascertainment of values so as to make the assessment equal and uniform throughout the State. Therefore, the Legislature has the power to classify railroad property as a separate class for purposes of taxation, and this is necessary from the inherent nature of the property. When the entire line of railroad is assessed as a unit, the constitutional requirement of equality and uniformity then presses the burden of taxation upon the whole mass alike, and prevents the possibility of legislative action oppressing one part for the benefit of the rest, or favoring one at the expense of the others. *Little Rock & Fort Smith Ry.* v. *Worthen*, 46 Ark. 312.

In the case of *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Worthen*, 52 Ark. 529, 13 S. W. 254, 7 L. R. A. 374, the court expressly held, that under article 16, § 5, of the Constitution, the Legislature has power to classify property for purposes of taxation and to provide for the valuation of different classes by different methods. It was further held that the separate classification of railway property for taxation and its assessment by an instrumentality different from that employed in the valuation of other property are justified by its peculiar nature and uses. Upon the subject the court said:

"From the peculiar nature of railroad property, its dissimilarity in use and value from the mass of other property, and its continuous extent through different localities, it is commonly regarded by the State that it cannot, in justice to the owners, be as fairly and uniformly valued by the numerous local instrumentalities provided for assessing other property, as by a State board created for the purpose. The industry of the Attorney General has furnished us references to the statutes of a large number of States showing that the practice of assessment of railways as units by State boards is almost universal."

In *Railway* v. *Williams*, 53 Ark. 58, 13 S. W. 796, it was held that, where a bridge corporation owning a railway toll-bridge grants the use thereof for a period of its corporate existence to a railway company, preserving its corporate franchise and the right to contract with other parties for the use of the bridge, the bridge should be assessed by the county assessor as the property of the bridge company, and not by the State Board of Railway Commissioners as the property of the railway company. In that case, however, the court said that bridges which are on the line of the railway and are railway property are to be assessed as an integral part of the railway. The court said that they fall within the exclusive jurisdiction of the State board, and the increased revenue which is derived from the railroad on account of them is allocated to the several counties through which the railroad runs. This comes from the legislative policy of taxing each railroad as a unit. The court recognized that the question depends upon the ownership of the bridge. If it be railway property used in connection with the operation of a railroad, it is then assessable as railroad property.

This rule has been adopted by the Court of Appeals of Kentucky in *Board of Equalization* v. *Louisville & Nashville Rd. Co.*, 139 Ky. 386, 109 S. W. 303, where it was held that, where a railroad owned and maintained a bridge as a part of its railroad system, such bridge was assessable for taxation by the railroad commissioner and not by the local authorities of the county in which it was located. To the same effect see *State of Missouri* v. *La. & Missouri River Rd. Co.*, 196 Mo. 523, 94 S. W. 279; and *Pittsburgh, etc., Ry. Co.* v. *Backus*, 154 U. S. 430, 14 S. Ct. 1114. In the latter case the court said:

"When a road runs through two States, it is, as seen, helpful in determining the value of that part within one State to know the value of the road as a whole. It is not stated in this statute that, when the value of a road running in two states is ascertained, the value of that within the State of Indiana shall be determined absolutely by dividing the gross value upon a mileage basis, but

746

only that total amount of stock and indebtedness shall be presented for consideration by the State board. Nevertheless, it is ordinarily true that, when a railroad consists of a single continuous line, the value of one part is fairly estimated by taking that part of the value of the entire road which is measured by the proportion of the length of the particular part to that of the whole road. This mode of division has been recognized by this court several times as eminently fair. Thus, in State Railroad Tax Cases, [92 U. S.] on page 608, it was said:

" 'It may well be doubted whether any better mode of determining the value of that portion of the track within any one county has been devised than to ascertain the value of the whole road, and apportion the value within the county by its relative length to the whole.' "

It is claimed, however, that this rule has been changed by the act of the Legislature of 1927, referred to above. See Acts of 1927, p. 400. This act created the Arkansas Tax Commission and defined its powers and duties. The act contains thirty-seven sections; and among the numerous regulations set out is one in § 16, which provides that, in the case of all corporations and other associations, the commission shall take into consideration the value of all the property as a unit whether all or only a part of it is in the State.

Section 22 of the act is the particular section relied upon by appellees to change the rule above announced. It reads as follows:

"The commission shall assign or apportion the assessed value of the property of all persons, firms, companies, co-partnerships, associations and corporations, which it is required to assess, in the following manner:

"There shall be deducted from the true market or actual value of the entire property, tangible and intangible, ascertained as in this act provided, the true market or actual value, as ascertained from the information furnished by report, or otherwise, of all real and personal property of such company not used in its business as a public utility, and the remainder shall be treated as the

true market or actual value of all its property, tangible or intangible, actually used or employed in its public utility business.

"The commission shall then ascertain and fix the value of the total utility operating property, tangible and intangible, in this State, by taking such proportion of the true market or actual value of the entire operating property, tangible and intangible, of such company, actually used in its public utility business, as its total lines within and without this State, or as its total receipts or income from operation both within this State bear to its total receipts or income from operation, both within and without this State, or by using such other recognized method, or combination of methods, as will, in the judgment of the commission, result in a just and equitable apportionment to this State of its due proportion of the value of the total utility operating property.

"When the value of the total utility operating property, tangible and intangible, in this State has been determined; or when the property and operations of such company is wholly within this State, there shall be assigned or apportioned to the several counties, towns, school districts and other taxing districts through or in which such company operates the value of all real estate and all tangible personal property which had a fixed situs therein on the first day of January of the current tax year; and the remaining part of the assessment, if any, shall be assigned or apportioned among the several taxing districts in proportion to the value of the tangible property assigned or apportioned thereto. Provided, that the value assigned to rolling stock of street, suburban or interurban railroad, railroad and bus line companies shall be apportioned among the several counties, towns and school districts through or in which such company operates in proportion to the mileage operated therein, and provided further, that the value of the personal property of any express or sleeping car company shall be apportioned among the several counties, towns and school dis-

tricts through or in which such company operates in proportion to the mileage operated therein.''

It is earnestly insisted that the latter part of the section, which provides that, when the value of the total utility operating property in this State has been determined, there shall be apportioned to the several counties, towns, school districts and other taxing districts, through or in which such company operates, the value of all real estate and all tangible personal property of a fixed situs. It is claimed that rolling stock is the only element of value apportioned upon a mileage basis, and that the bridge has a fixed situs and should be apportioned to the school district and other taxing districts in which it is situated. They say that it possesses a local value easily determinable; and that, by the method of assessment used by the Tax Commission, they have refused to apportion such value to the taxing district where the bridge is located.

We do not agree with this contention. In the first place, statutes are to be construed with reference to the public policy they are designed to accomplish. *Harris* v. *State,* 169 Ark. 627, 276 S. W. 361; *Miller* v. *Tatum,* 170 Ark. 152, 279 S. W. 1002; and *Turner* v. *Ederington,* 170 Ark. 1155, 282 S. W. 1000. In the last case cited, it was said that the intention of a statute is to be collected either from the words, the context, the subject-matter, the effects and consequences, or from the spirit and reason of the law, and from other acts *in pari materia.*

This is but another way of expressing a well-settled rule of statutory construction which leads to the same conclusion; and that is, that uncertain or ambiguous words of a statute should always be construed so as, if possible, to produce a reasonable and just result. *State ex rel.* v. *Louisiana & M. R. R. Co.,* 215 Mo. 479, 114 S. W. 956.

Under our Constitution and laws, a railroad company could not acquire a bridge except for railroad use. When a bridge was purchased by the railroad company and used by it for the purpose of operating its trains on the tracks laid across the bridge, then the bridge became

a part of the line of the railroad, and was to be assessed according to the mileage rule. The value of the bridge would be taken into consideration by the Arkansas Tax Commission as one of the elements which go to make up the total market value of the railroad; and when the total value is divided by the number of miles the railroad is in length, the value of the bridge is equally distributed along the entire length of the railroad. Then, when the railroad company pays its taxes, each county and taxing district through which it passes receives its proportional part of the taxes, instead of allocating the entire taxes assessed against it to the county in which the bridge is located. It is apparent that, if the bridge is to be only used for railroad purposes, it has no intrinsic or commercial value apart from being used as so much of the line of railroad. When the bridge was purchased by the railroad company, it became an integral part of the railroad, and, as such, should be assessed as a part of it and not as a separate and independent structure by the local authorities. It is manifest from the statute that it was the intention of the lawmakers to classify railroads separately for the purposes of taxation and to have them assessed by the Arkansas Tax Commission, instead of by the local authorities in the counties through which the line of railroad extends in this State. No equality or uniformity in taxation, such as is required by our Constitution, would be obtained if the bridges across navigable streams are to be assessed by the local authorities or if the taxes are to be apportioned by them instead of being valued as a unit by the Arkansas Tax Commission and apportioned by it according to the mileage in the various counties through which the railroad extends.

We are of the opinion that the statute, when construed as a whole, intended that the property of railroads reasonably necessary to be used, and in fact used, in the performance of its duty to the public, as a public carrier, is an entirety, and that bridges which become an integral part of the railway are not to be separated for the purpose of taxation. Therefore we think that the Arkansas

Tax Commission properly assessed the railroad as a unit, and that this included the bridge in question across the Mississippi River, and that the Commission also properly apportioned the taxes according to mileage, including the valuation of the bridge as an integral part of the railroad.

It follows that the court erred in overruling the demurrer to the petition. For that error the judgment will be reversed, and the cause will be remanded with directions to the court to sustain the demurrer and for further proceedings according to law and not inconsistent with this opinion.