NORTH LITTLE ROCK SPECIAL SCHOOL DISTRICT *v.*
KOPPERS COMPANY, INC.

4-8112 200 S. W. 2d 519

Opinion delivered March 17, 1947.

Rehearing denied April 14, 1947.

*John M. Rose,* for appellant.

*Armistead, Rector & Armistead, Henry Donham* and *Thos. S. Buzbee,* for appellee.

ROBINS, J. North Little Rock Special School District and Pulaski County filed a petition with the Tax Division of the Arkansas Public Service Commission ask-

ing the Commission to direct the Assessor of Pulaski county to assess for taxation for the year 1946 and each year thereafter against Koppers Company, Incorporated, all poles, piling and crossties, regardless of ownership thereof, at the plant of said company located three miles east of North Little Rock; or to require the Assessor of said county to assess for taxation, as property not used for utility purposes, all of said property owned by the Missouri Pacific Railroad Company or the Chicago, Rock Island & Pacific Railroad Company; or that the Commission apportion to the said county and district the assessed value of such part of said property as had a *situs* therein on January 1, 1946.

The Commission refused to grant any of the relief prayed in said petition and on appeal the Commission's order was affirmed by judgment of the circuit court. To reverse that judgment this appeal is prosecuted.

The establishment of Koppers Company, Inc., is known as a "wood preserving plant," and there timbers, such as poles, piling and crossties are dried and treated with preservative chemicals. At all times a large amount of these timbers are on hand at this plant, and the company itself owns part of the stock on hand, which it treats and sells on its own account. It is conceded that all such stock owned by the company has been duly assessed. However, most of these timbers belong to customers of the company; and the principal portion thereof is owned by the Missouri Pacific Railroad Company and the Chicago, Rock Island & Pacific Railroad Company. These railroad companies purchase from various persons along their lines suitable timbers, ship them into Koppers Company plant, have them treated, and then distribute the treated timbers throughout their respective systems where needed. These timbers belonging to the two railroad companies, on hand at the plant for treatment, furnish the basis for the controversy, appellants insisting that by one of the three methods set out in their petition these timbers should be assessed for the benefit of the local taxing units, while the con-

tention of appellees is that the railroad companies have already included them in their assessments.

*In limine,* we must dispose of the contention by appellees that no appeal to the circuit court from an order of the Commission such as the one questioned here is authorized by law. In support of this contention appellees cite our decision in the recent case of *Little Rock Special School District, et al.* v. *Arkansas Public Service Commission,* 210 Ark. 165, 194 S. W. 2d 874. In that case, referring to the provisions of law under which appeals from the Commission's findings are authorized, we said: "It appears to us that the whole substance of said Act relates to the regulation and operation of public utilities, and that the right of appeal by 'any party aggrieved', as used in said sections 20 and 21, has reference only to any party aggrieved on account of an order made by the Commission in a proceeding involving the regulation or operation of a public utility, and no public utility is involved in this proceeding." In the proceeding at bar the Commission was asked to make an order affecting the assessment of a substantial amount of property belonging to two railroad companies, and as to the allocation of the tax derived therefrom. It appears, therefore, that the order complained of by appellants is one made in the exercise of the Commission's regulatory powers over public utilities, and that an appeal thereform to the circuit court may be properly prosecuted for that reason, if for none other.

I.

It is first argued by appellants that Koppers Company, Inc., was required to assess the timbers belonging to these railroad companies under the provisions of § 13728, Pope's Digest, which is as follows:

"Every person who shall purchase, receive or hold personal property of any description for the purpose of adding to the value thereof by process of manufacturing, refining, rectifying, or by combination of different materials, with a view of making a gain or profit by so doing, shall be held to be a manufacturer, and he shall make out and deliver to the assessor a sworn

statement of the amount of his other personal property subject to taxation also including in his statement the average value estimated, as provided in § 13726, of all articles purchased, received, or otherwise held for the purpose of being used, in whole or in part, in any process or operation of manufacturing, combining, rectifying or refining, which, from time to time, he shall have on hand during the year next previous to the time of making such statement, if so long he shall have been engaged in such manufacturing business, and, if not, then during the time he shall have been so engaged. Every person owning a manufacturing establishment of any kind and every manufacturer shall list, as a part of his manufacturer's stock, the value of all engines and machinery of every description used or designed to be used for the aforesaid purpose.''

This statute is of no avail to appellants because, as to timbers sent in to it by its customers for preservative treatment, appellee, Koppers Company, Inc., was not a manufacturer within the meaning of this statute. *Anheuser-Busch Brewing Association* v. *United States,* 207 U. S. 556, 28 S. Ct. 204, 52 L. Ed. 336; *Indiana Creosoting Company* v. *McNutt,* 210 Ind. 656, 5 N. E. 2d 310. In the last cited case the Indiana Supreme Court said: ''The process of creosoting the ties cannot in any sense be considered manufacturing.'' Furthermore, by the plain language of this section, the property that a manufacturer is required thereunder to assess is limited to that which is owned by the manufacturer himself. Therefore the Commission did not err in refusing to require the listing for assessment in Pulaski county of the timbers belonging to the railroad companies, on hand for treatment at the creosoting plant. This conclusion obviates any discussion as to the contention, raised by appellees, that appellant's remedy, if any, was the prosecution of an appeal from the action of the Assessor in failing to assess the property.

## II.

Under the laws of this state the property, real and personal, of railroad companies is assessed for taxation

as a whole by the Commission and the valuation thereof apportioned on a mileage basis to the various counties, cities and school districts of the state traversed by the lines of such companies. Section 2048, Pope's Digest. See *Arkansas Tax Commission* v. *Crittenden County,* 183 Ark. 738, 38 S. W. 2d 318.

It is urged by appellants that the timbers involved herein ought to be assessed in Pulaski county, under the provisions of § 2051, Pope's Digest, as property "not used in the utility operation." We cannot agree with this contention. These railroad companies were not dealers in crossties or timbers. They bought only such as they required in the maintenance and operation of their rail lines; and the statute referred to was not intended to apply to material acquired solely for the purpose of maintaining the utility operation.

A somewhat similar question was presented in the case of *Philadelphia & Reading Railroad Company* v. *Woodbridge Township,* 91 N. J. L. 180, 102 Atl. 392. In that case the township in which a creosoting plant was located insisted that crossties belonging to the railroad company and sent to the plant for treatment should be assessed for taxation in that township. Denying the township the relief sought by it, the New Jersey court said: "That the ties in question were not *actually* in use for railroad purposes on the taxing date is apparent from what has already been stated. The primary question, therefore, is what is the scope to be given to the words 'used for railroad purposes', as this phrase appears in section 1 of the Railroad Tax Act? That question, however, is no longer an open one. . . . It has been consistently held, whenever the matter has come up for judicial consideration, that property owned by a railroad corporation, which has been acquired and is held for a railroad use to which it is intended to be subjected in the near future, is property used for railroad purposes within the meaning of the Railroad Tax law, although such use has not actually been begun; and, therefore, is taxable under that Act, and not under the general tax law of the state."

We conclude that the ties involved in this litigation were not embraced in the category made locally assessable under the provisions of § 2051 of Pope's Digest.

## III.

It is finally argued by appellants that the Commission, in making apportionment of the valuation of these two railroad companies, as required by law, should assign and apportion to appellants the entire assessed value of the timbers in controversy, for the reason that this property (or a certain part thereof) had a "fixed *situs*" in the said county and school district and was assessable therein under the provision of § 2048 of Pope's Digest.

But this property, under the record here, did not have a fixed *situs* in Pulaski county. It was sent there to be "treated" and to be withdrawn and sent out over the lines of the two railroad companies after the treating process was completed. It was not to be put in use in Pulaski county alone, or to be kept permanently in that county, but was to be used throughout the system. Therefore it was proper for the Commission to apportion its value to the various taxing units of the state traversed by the lines of these railroad companies.

The order of the Commission denying relief to appellants was correct; and the judgment of the circuit court is accordingly affirmed.