## The ARKANSAS STATE POLICE COMMISSION, J. E. DUNLAP, Jr., Chairman et al v. B. G. DAVIDSON

5-6191 490 S.W. 2d 788

Opinion delivered February 26, 1973

*Ray Thornton,* Atty. Gen., by: *Henry Ginger,* Deputy Atty. Gen., for appellants.

*Jerry Screeton, F. Russell Rogers* and *James M. Thweatt,* for appellee.

CONLEY BYRD, Justice. The issue on this appeal is whether the appellants, The Arkansas State Police Commission, J E. Dunlap, Chairman, et al, can hold the hearing required by Ark. Stat. Ann. § 42-406 (d) (Repl. 1968), for the reinstatement of a discharged State Policeman in executive session under the Freedom of Information Act, (Act 93 of 1967). The trial judge construed the

Freedom of Information Act to require that the hearing of testimony, as distinguished from a discussion or consideration by the Commission, must be held in public. We agree.

For the purpose of this proceeding, it is admitted that appellee, B. G. Davidson was dismissed from the State Police Force, and that in apt time he made application for a reinstatement hearing, and that appellants refused to give him a public hearing.

Arkansas Statutes § 42-406(b) (Repl. 1968), provides that a member of the State Police Force can only be removed for cause. Subsection (d) thereof provides that the Director must give a discharged State Policeman written notice of the reasons therefor and that such discharged State Policeman can appeal his dismissal to the Commission. That subsection further provides:

> "An appeal may be taken to the Circuit Court of Pulaski County from any order of the Commission discharging, . . . any member of the State Police Force, provided such appeal be perfected within thirty (30) days from the date of the final order made by the Commission, and such appeal shall be heard by the Circuit Court without the introduction of any further testimony."

The two germane sections of the Freedom of Information Act here involved are Sections 2 and 5. Section 2, [Ark. Stat. Ann. § 12-2802 (Repl. 1968)] provides:

> "It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this act [§§ 12-2801—12-2807] is adopted, making it possible for them, or their representatives, to learn and to report fully the activities of their public officials."

Section 5, [Ark. Stat. Ann. § 12-2805 (Repl. 1968] provides:

"Except as otherwise specifically provided by law, all meetings formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts, and all boards, bureaus, commissions, or organizations of the State of Arkansas, except Grand Juries, supported wholly or in part by public funds, or expending public funds, shall be public meetings.

The time and place of each regular meeting shall be furnished to anyone who requests the information.

In the event of emergency, or special meetings the person calling such a meeting shall notify the representatives of the newspapers, radio stations and television stations, if any, located in the county in which the meeting is to be held and which have requested to be so notified of such emergency or special meetings, of the time, place and date at least two [2] hours before such a meeting takes place in order that the public shall have representatives at the meeting.

*Executive sessions will be permitted only for the purpose of discussing or considering employment, appointment, promotion, demotion, disciplining, or resignation of any public officer or employee.*

Executive sessions must never be called for the purpose of defeating the reason or the spirit of the Freedom of Information Act.

No resolution, ordinance, rule, contract, regulation of motion considered or arrived at in executive session will be legal unless following the executive session, the public body reconvenes in public session and presents and votes on such resolution, ordinance, rule, contract, regulation, or motion." [Emphasis ours].

Appellants rely upon the italicized portion of Section 5, for their authority to hold an executive session. When that portion permitting executive sessions ". . . only for the purpose of discussing or considering employment, . . . disciplining, or resignation," of any employee is

considered in the light of the declaration of public policy set forth in Section 2, we cannot construe it broad enough to permit an executive session for the purpose of hearing testimony. Like the trial court, we read the provision permitting an executive session, when applied to a statutory evidentiary hearing such as this, as giving to the Commissioners, after the hearing of testimony (and arguments, if any), the limited right of retiring into executive session ". . .*only for the purpose of discussing or considering*. . ." among themselves the decision they should reach. However, we point out that the last paragraph of Section 5 makes it mandatory for the Commissioners to reassemble in public session for the purpose of voting on the matter before them.

Afirmed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result. I do not agree that the issue before us is nearly as broad as stated in the majority opinion. I would not go beyond the issue actually presented. In order that the matter be viewed in the proper perspective, a more comprehensive statement of the case than is contained in the majority opinion is necessary.

Appellee filed a petition for writ of mandamus to require the Arkansas State Police Commission to conduct a public hearing on his appeal from the order dismissing him. The only reason petitioner assigned as a basis for this relief was that the commission was considering whether his dismissal was justified and not his employment, appointment, promotion, demotion, disciplining or resignation, covered by the exception to Ark. Stat. Ann. § 12-2805 (Repl. 1968). Appellants asserted that the hearing of appellee's appeal did come within that exception, and that he was not entitled to a public hearing.

The writ set out the circuit court's holdings in unusual detail. It commanded appellants to conduct a public hearing, with the qualification that after the hearing, the commission might go into executive session to discuss or consider its disposition, and thereafter recon-

vene in public session and make known its finding and decision. Appellants only assert that the direction to hold a public hearing is erroneous. No appeal was taken from that portion of the judgment permitting the executive session for deliberation, and no one asserts here that the circuit judge's holding in this respect is erroneous.

The basic purpose of the Freedom of Information Act, is, of course, for the benefit of the general public. The exception provided by Ark. Stat. Ann. § 12-2805, however, is primarily for the protection of the employee or prospective employee. It has been suggested that the rationale of such a section is that government employees should not be put in a more public position than employees of a private organization when their personal attributes are being discussed, even though it might be desirable in some cases that public sessions to consider such matters be held. See Comment, Access to Governmental Information in California, 54 Calif. L. Rev. 1650, 1657 (1966). It would seem that the best interests of the accused might have been served by a hearing in executive session, if the result is ultimately favorable to him. But the matter cannot be viewed retrospectively.

It is to be noted that executive sessions are only permitted by the statute—not required. We have heretofore recognized the interest of a public officer in having charges against him considered in a public hearing in *Rockefeller v. Hogue,* 244 Ark. 1029, 429 S.W. 2d 85, when we expressed the opinion that hearings on serious charges for removal of an officer serving a fixed term should be public if the accused desired. Although there might be bases of distinction between the cases of a public officer serving a fixed term and a public employee serving for an indeterminate period, no reason for making such a distinction appears here. Appellee has clearly, positively and repeatedly asked for a public hearing. In the absence of an overriding public interest calling for a private hearing (e.g., national security), he should have it. The only suggestion of such an interest in this matter is the argument in appellants' brief that witnesses whose attendance cannot be compelled by the commission would be more reluctant to voluntarily appear and candidly assert facts detrimental to the accused in a public hearing than in a

closed session. This argument is made academically, as there is nothing in the record to indicate that there are witnesses in this case who will not voluntarily appear or who are reluctant to testify. It is offered principally in rationalizing the basis for the exception. This contention does not seem to me to override appellee's desire for a public hearing, particularly in view of the fact that, if he ultimately sought review of an order discharging him, the record of the hearing would then be made public when filed in the circuit court. Since this is the case, I agree with the result reached by the majority.

I do not agree, however, that the act does not permit the hearing of testimony in a case such as this to be had in executive session when the commission desires and the employee involved does not object. This approach gives a far too narrow construction to the word "considering." To consider may mean more than to deliberate or adjudge. It may mean "to entertain" or "give heed"; "to fix the mind on with a view to careful examination"; "to examine." *Eastman Kodak Co.* v. *Richards,* 123 Misc. 83, 204 N.Y.S. 246 (1924); *Massachusetts Mut. Life Ins. Co.* v. *Colorado Loan & Trust Co.,* 20 Colo. 1, 36 P. 793 (1894); *Rodolf* v. *Board of Commissioners of Tulsa County,* 122 Okla. 120, 251 P. 740 (1926); *United Bro. of Carpenters* v. *Industrial Commission,* 363 S.W. 2d 82 (Mo. App. 1962); Black's Law Dictionary, 4th Ed. See also, *People* v. *Tru-Sport Pub. Co., Inc.,* 160 Misc. 628, 291 N.Y.S. 449 (1936). Even though the word "consider" might be given the very narrow connotation of "deliberate," as implied by the majority opinion, this is not at all consistent with the obvious purpose of the exception and would leave the commission free to hold a public hearing of evidence on charges against an employee over his objection. I do not think that this was the legislative intent and insist that a reading of the whole act requires that we give the word consider an interpretation broad enough to include the hearing of evidence. Otherwise, the whole purpose of the exception can easily be defeated.