COMMERCIAL PRINTING COMPANY and Katherine Gosnell WELLS *v.* Marshall N. RUSH, Lynn WADE, Dr. Thomas WORTHAM, Richard Earl GRIFFIN and Eula DORSEY, Acting in Their Capacities as Members of the Board of Correction of the State of Arkansas

76-98                    549 S.W. 2d 790

Opinion delivered April 11, 1977
(In Banc)
[Rehearing denied May 31, 1977.]

469

470

*Coleman, Gantt, Ramsay & Cox,* by: *William C. Bridgforth,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Jackson Jones,* Asst. Atty. Gen., and *Wade, McAllister, Wade & Burkes, P.A.,* and *Bridges, Young, Matthews & Davis,* for appellees.

WILLIAM C. ADAIR, JR., Special Justice. At a meeting of the Board of Corrections of the State of Arkansas, Appellees herein, on October 25, 1975, an executive session was called and the public excluded therefrom. Katherine Gosnell Wells, Appellant, a reporter for the Pine Bluff Commercial owned and operated by the Appellant Commercial Printing Company was present, objected to the calling and holding of the executive session, and was ejected over her protest from the meeting. One member of the Board, Mr. Lynn Wade, opposed the Board's decision to go into executive session and refused to participate therein and by separate counsel has filed an Appellee's Brief in support of the Appellant's argument. The executive session was called to discuss personnel matters, specifically the possible dismissal or disciplining of Department of Correction employees in connection with alleged wrong doing by these employees that had arisen after an inmate under their supervision had died.

Appellants Commercial Printing Company and its reporter, Katherine Gosnell Wells, sought a declaratory judgment declaring that the executive session held by the Board of Correction on October 25, 1975, was in violation of the

Freedom of Information Act as set forth in Arkansas Statutes Annotated, Title 12, Chapter 28 (September, 1967). A hearing was held and subsequently the lower court after reviewing a taped recording of the executive session ruled that the session was in accordance with the Freedom of Information Act as to the subject matter discussed. The Court also ruled, however, that the Board had violated the Freedom of Information Act when it called Department of Correction Commissioner Hutto and Cummins Superintendent Lockhart into the executive session at various times.

Appellants then filed a motion seeking to have the Court make public the tape recording and any transcript thereof on file be made immediately public. The Court denied the motion citing in its opinion that the subject matter of the session was proper within the Freedom of Information Act.

From the lower court's judgment declaring that the subject matter of the executive session was proper and its refusal to make the tape recording of the session public, Appellants bring this appeal.

The issues prssented in this appeal are directed to the historic legal concepts of the "public's right to know" versus the protection of the "rights of the individuals" involved. The Legislature has clearly expressed its intent concerning the policies of the Freedom of Information Act and the declared public policy of this State dealing with the public's business in Ark. Stat. Ann. Section 12-2802:

"DECLARATION OF PUBLIC POLICY. It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials, and the decisions that are reached in public activity and in making public policy. Toward this end, this Act (Section 12-2801 — 2807) is adopted, making it possible for them, or their representatives, to learn and to report fully the activities of their public officials." This Court has declared: "We have no hesitation in asserting our conviction that the Freedom of Information Act was passed wholly in the public interest and is to be liberally interpreted to the end that its praise-worthy purposes may be

achieved." *Laman* v. *McCord,* 245 Ark. 401, 432 S.W. 2d 753 (1968).

The Legislature has provided for both the public's right to know and protection of the individual's rights from unwarranted adverse publicity and ensuing damage to individual's reputations in Ark. Stat. Ann. Section 12-2805 (Repl. 1968) providing:

> "Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of . . . all boards, bureaus, commissions, or organizations of the State of Arkansas . . . supported wholly or in part by public funds, or expending public funds shall be public meetings. . . "

> "Executive sessions will be permitted only for the purpose of discussing or considering employment, appointment, promotion, demotion, disciplining, or resignation of any public officer or employee."

The policy reasons dictating the rule of liberal construction of the act does not mean that the equally praiseworthy policy considerations which motivated the General Assembly to provide the single exception permitting executive sessions, i.e., for the purpose of discussing and considering personnel matters, are not equally meritorious, or are to be any more lightly regarded. The Act as a whole should be construed with reference to the public policy or policies it was designed to accomplish. *Arkansas Tax Commission* v. *Crittenden County,* 183 Ark. 738, 38 S.W. 2d 318 (1931). A statute must be analyzed in its *entirety* and meaning given to *all* portions. Construction of a statute which gives meaning and consistency to its various sections is desirable. *Callahan* v. *Little Rock Distributing Company,* 220 Ark. 443, 248 S.W. 2d 97 (1952).

Appellants earnestly urge with respect to the executive session in the present case that, "only after all of the discussion which took place in private had taken place in public and all of the information furnished and comments elicited should the Board of Correction have adjourned to executive session to determine if discipline was in order for particular public of-

ficers or employees." If this interpretation of the executive session provision of the Freedom of Information Act is given effect, that section would be rendered virtually meaningless; and the legislative intent would be frustrated. A public discussion of allegations later proved unwarranted would lead to adverse publicity and unjustifiable damage to the reputation of the individuals involved. It is not the bare decision whether or not to discipline an employee that the executive session provision allows to be made in privacy, but rather the discussion or consideration of particular acts or omissions of the employee whose conduct has been called into question. This is the only way to avoid the "great and often unjustified damage to personal reputations, which such provisions are intended to prevent". COMMENT, 75 Harv. L. Rev. at 1208 (1962).

The ultimate fact, the employment, appointment, promotion, demotion, disciplining or resignation of any public officer or employee should be public, and the public apprised of the officials acts of their elected and appointed public officials. At this time the public officials' actions would be open to question and the evidentiary facts supporting the actions of the public officials be questioned and made known to the public.

Section 12-2805 further provides that, "Executive sessions must never be called for the purpose of defeating the reason or the spirit of the Freedom of Information Act." The executive session under consideration in the present case was not called for that purpose. It was called for the purpose of discussing a personnel matter, and the discussion was carefully limited to the conduct of specific prison employees in relation to the death of an inmate. It is true as Appellant points out in its brief that general items were discussed concerning (1) Heat stroke symptoms and policies of the prison relating to the recognition of and treatment of such symptoms; (2) Assignment procedures in connection with inmates relating to work detail; (3) Policies for re-evaluation of medical reports; (4) Procedures for interviewing transferred inmates; (5) Procedures dealing with transfer of information from officers at the Cummins unit to officers at the Tucker unit; (6) Work habits and propensities of deceased inmates;

(7) Prison policies concerning meals, especially relating to inmates being transferred in early morning hours from one unit to the other; (8) General Harassment; (9) Procedures for handling inmates who will not work; (10) The composition of hoe squads; (11) Procedures dealing with transfer runs and transfer vehicles; (12) Questions asked of Commissioner Hutto and Superintendent Lockhart concerning the death of the inmate involved; (13) The State Police investigation into the death of the inmate in question; (14) Certain medical questions. However, this information was discussed within an overall general context of whether there had been any violation of board policies and procedures within which public disciplinary or other public action should be taken. The board could not make an informed decision as to discipline or any other action without this candid examination of the facts and free discussion of the board policies. No official acts of the board were taken in executive session. The Legislature has specifically provided for this discussion. "Executive sessions will be permitted only for the purpose of *discussing* or *considering* employment, appointment, promotion, demotion, disciplining or resignation of any public officer or employee." Ark. Stat. Ann. Section 12-2805 (Repl. 1968). We agree with the following excerpt from the Opinion of the lower court:

"The Act provides that public bodies may meet in executive session for the purpose of considering, among other things, the disciplining of any employee. Once an executive session has been called for the purpose of disciplining, it is implicit in the act that all discussion must be related to the legal purposes for which the session was called. It is, however, both logical and within the spirit of the act to note that such discussion could of necessity deal with several areas which, taken out of the context of the total discussion, might be construed as improper subject matter for executive session. In fairness to the employee as well as the public, the discussion must delve into all circumstances surrounding the incident which has given rise to the question of discipline in the first place. The board must determine what lines of questioning it must follow to their logical ending to ferret out the relevant and material information necessary to determine what, if any, discipline is

appropriate to the given situation. To do otherwise would be an injustice to the employee in question and a failure on the part of the board to meet the responsibility assigned to them by the Legislature."

However, once a decision has been made in executive session that discipline, or other action is needed, all further acts of the board should be public, and the public officials accountable and answerable for their actions. In the instant case the board is to be commended on recording its executive session for its own record and possible judicial review. Of necessity the policies of a board must be reviewed to see if there has been an infraction which would warrant discipline or official action. The trial court properly reviewed the entire recording of the executive session in question in which official state reports and policies of the board were reviewed by the board for the purpose of determining if in fact there had been an infraction of board policy, and correctly made the tape recording a part of the record. See *U.S.* v. *Nixon,* 418 U.S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974). It appears from our review of the record that a candid, free discussion was held on the way procedures were carried out by the penal institution by its officials with a view as to whether discipline was warranted. It should be pointed out that it was not the official function of this board to act as a grand jury or in the capacity of the prosecuting attorney's office to bring possible criminal proceedings from the investigative reports from other agencies such as the State Police. The use of these reports and records of other agencies by the board in question was limited to the question of whether facts were available to indicate an infraction of board policy or procedure to warrant *official* board disciplinary action.

After reviewing the tape recording of the executive session in the present case the lower court determined that the discussion was limited to matters which were related to the possible need for disciplining certain named employees of the Department of Correction. Therefore, the court declared that, "The executive session . . . was in accordance with the Freedom of Information Act as to subject matter discussed." While that finding is not binding on this Court, e.g., *McGill* v. *Miller,* 183 Ark. 585, 37 S.W. 2d 689 (1931), it should be ac-

corded significant weight. This Court has held that the judgment of a Circuit Court in a declaratory judgment proceeding is reviewed in the same manner as any other judgment, and if there is any substantial evidence to support the finding upon which the judgment is based, it will be affirmed. *Midsouth Insurance Company* v. *Dellinger*, 239 Ark. 169, 388 S.W. 2d 6 (1965); Ark. Stat. Ann. Section 34-2506 (Repl. 1962). In determining whether there is any substantial evidence to support the trial court's finding, this Court has stated that it must view the record in the light most favorable to the Appellee. *Power* v. *Howard*, 253 Ark. 1052, 490 S.W. 2d 435 (1973). The presumptions on appeal are all in favor of the validity of the judgment of the trial court. *Woodman of Union of America* v. *Henderson*, 186 Ark. 524, 54 S.W. 2d 290 (1932). It is our finding that this court did not err in finding that the executive session was in accordance with the Freedom of Information Act as to subject matter discussed.

Appellants for their second point contend that the court erred in refusing to allow the plaintiff to make an offer of proof and play the tape into the record. It is conceded by the Appellant that the court did accept the tape and what it said into evidence. The court accepted the tape ph; ically into the case and although not transcribed made it a part of the record. Appellants object to the court's refusal to allow the tape to be transcribed by the court reporter. As previously discussed, the Freedom of Information Act specifically provides for an executive session without public purview. There is the presumption that public officials act lawfully, sincerely in good faith in carrying out their duties. *Arkansas Pollution Control Commission* v. *Coyne*, 252 Ark. 792, 481 S.W. 2d 322 (1972). Had the board not recorded the executive session the presumption that the members properly limited their discussion to personnel matters as required by law would have made the Appellant's burden in proving the contrary practically impossible. However, as the board in acting in good faith had a tape recording made, it was appropriate for the judge to accept the tape into evidence and inspect it in camera, as he did. See *Environmental Protection Agency* v. *Mink*, 410 U.S. 73, 35 L. Ed. 2d 119, 93 S. Ct. 827 (1973). There was no reason for the court to order the contents of the tape recording of a confidential executive session to be transcribed

once it was determined that the subject matter was within the exception. Accordingly, we find that the trial court was correct and within its discretion to refuse to have it transcribed.

Appellants further contend that the lower court erred in refusing to make the transcript public alleging that the board waived the confidentiality of the executive session because of the court's finding that Commissioner Hutto and Superintendent Lockhart were improperly called into the executive session. This court acknowledges that the appearance of Correction Commissioner Teryl Don Hutto and Superintendent A. L. Lockhart, Cummins Prison Superintendent, before the Board in executive session on October 25, 1975, was at that time a violation of the Freedom of Information Act. However, we hold that the refusal of the lower court to make the tape recording of that session public was necessary to protect the individuals who were the subjects of the discussion in the executive session from unfair and/or unwarranted publicity. The procedural irregularity of allowing agents of the Board whose assistance the Board sought in its effort to determine whether certain lower echelon employees of the Department of Correction should be disciplined should not be held to destroy the confidential nature of an otherwise valid executive session. The individuals whose rights are protected by the exception to the Freedom of Information Act should not be penalized because of an innocent mistake by a board or commission which has at all times acted in good faith.

It should be noted, however, that the Arkansas Legislature in special session in 1976 amended the Freedom of Information Act to allow the presence in executive session of persons falling into their category.

AFFIRMED.

GEORGE ROSE SMITH, HICKMAN, JJ., and LEWIS D. JONES, Special C.J., dissent.

HARRIS, C.J., and HOLT, J., not participating.

LEWIS D. JONES, Special Chief Justice, dissenting. I dissent. The majority would pull every tooth out of the mouth of

the State which says, "Executive sessions will be permitted *only* for the purpose of discussing or considering employment, appointment, promotion, demotion, disciplining, or resignation of any public officer or employee." (Emphasis added) Ark. Stat. Anno. Section 12-2805. If the Board of Correction of the State of Arkansas or any other public agency is going to be permitted in executive session to delve into, discuss, and deliberate on items such as:

1. Heat stroke symptoms and policies of the prison relating to the recognition of and treatment of such symptoms;

2. Assignment procedures in connection with inmates relating to work detail;

3. Policies for re-evaluation of medical reports;

4. Procedures for interviewing transferred inmates;

5. Procedures dealing with transfer of information from officers at the Cummins unit to officers at the Tucker unit;

6. Work habits and propensities of deceased inmates;

7. Prison policies concerning meals, especially relating to inmates being transferred in early morning hours from one unit to the other;

8. General harassment;

9. Procedures for handling inmates who will not work;

10. The composition of hoe squads;

11. Procedures dealing with transfer runs and transfer vehicles;

12. Questions asked of Commissioner Hutto and Superintendent Lockhart concerning the death of the inmate involved;

13. The State Police investigation into the death of the inmate in question;

14. Certain medical questions;

all under the umbrella of the fact that disciplinary procedures might be invoked, then there is nothing that can't be handled in executive session and thereby removed from the public scrutiny.

I think it is most significant that neither Correction Commissioner Teryl Hutto or Superintendent A. L. Lockhart, or any other employee requested an executive session or requested that the proceedings be made public, or made any request of any kind in connection with the proceedings before the Board of Correction; and after all under the theory of the majority case, it is their right the Court is so vigorously protecting. *Ark. State Police* v. *Davidson,* 253 Ark. 1090, 490 S.W. 2d 788 (1973).

It should also be noted that there is nothing in the statute that *requires* that executive sessions be conducted in connection with the employment, appointment, promotion, demotion, disciplining, or resignation of a public officer; and it is obvious from the context of this meeting that the concern as to public inspection of the facts might well have been as much or more on the part of the Board members as on the part of any employee.

I believe that the need for the public to know far outweighs any personal embarrassment which the members of the Board or the supervisors of the prison system may suffer as a result of public access to policy and procedure discussions. In the literal sense, every meeting of the Board of Correction could deal with the discipline of some employee as a result of some act that is brought before the Board; and if followed to its logical conclusion, each meeting of the Board could be held substantially in secret under the ruling of the majority in this case. This Court has zealously in the past safeguarded the public's right to know. *Ark. Gazette* v. *Pickens,* 258 Ark. 69, 522 S.W. 2d 350 (1975).

In the *Laman* v. *McCord* case cited by the majority this Court very correctly held that a liberal interpretation should be given to the statute in order to effectuate its public policy provisions. This would necessarily require a narrow interpretation of the exceptions to the rule. Yet the majority now would swing wide the door to let the entire enforcement of the statute out through the exception. *Laman* v. *McCord*, 245 Ark. 401, 432 S.W. 2d 753 (1968).

The majority is very correct in saying that this case is almost unique in that a total transcript of the proceedings was available for perusal. Whereas in the ordinary secret meeting it is very difficult to ascertain the facts that actually were discussed if the conspiracy of silence is maintained. All the more reason to strictly adhere to the actual language of the statute. If the Legislature had desired to exempt the Board of Correction from the Freedom of Information Act, it could have very easily done so just as it changed the Act to permit the employees whose discipline is under question to attend the executive sessions; and in the absence of such amendatory legislation, I would adhere strictly to the Freedom of Information Act.

Since I believe the lower court erred in ruling that the executive session was proper, it naturally follows that the contents of the "executive session" should have been made public. There is authority for having evidence reviewed in camera; however, to permit the secret transcript of a secret meeting to be introduced into evidence in secret, reviewed in secret by the trial court, and further reviewed in secret by the Appellate Court, is a dangerous precedent and smacks to my mind of Star Chamber proceedings. I would reverse the trial court and order that the contents of the "executive session" in question be made public.