Cite as 2025 Ark. App. 197

# ARKANSAS COURT OF APPEALS
## DIVISION I
#### No. CV-22-336

| | |
|---|---|
| CHARLES L. DANIELS II, INDIVIDUALLY; CHARLES L. DANIELS II, ON BEHALF OF PAYTON DANIELS, A MINOR; AND CHARLES L. DANIELS II, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF HARMONY LYNN DANIELS<br><br>APPELLANTS | Opinion Delivered April 2, 2025<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION<br>[NO. 60CV-18-5971] |
| V. | HONORABLE HERBERT T. WRIGHT, JUDGE |
| C. WAYNE LYLE, M.D.; C. WAYNE LYLE, M.D., P.A.; MEDICAL SERVICES GROUP, LTD.; BAPTIST HEALTH; AND DIAMOND RISK INSURANCE LLC<br><br>APPELLEES | AFFIRMED |

**KENNETH S. HIXSON, Judge**

This is an appeal from an order granting summary judgment in a medical-malpractice case related to medical services provided to Harmony Daniels hours before her death. Appellant Charles L. Daniels II, individually and on behalf of his minor daughter and Harmony's estate (hereinafter referred to as "Daniels"), appeals a Pulaski County Circuit Court order granting summary judgment in favor of appellees C. Wayne Lyle, M.D.; C.

Wayne Lyle, M.D., P.A.; Medical Services Group, Ltd.; Baptist Health; and Diamond Risk Insurance LLC.

In this appeal, Daniels argues that he was not required to obtain the services of a medical expert witness because the appellees' alleged negligence "lies within the jury's comprehension as a matter of common knowledge." Appellees respond that expert testimony was required because a jury could not comprehend the appellees' alleged negligence as a matter of common knowledge. Thus, appellees argue that summary judgment was appropriate. Appellees contend, as an alternative ground for affirmance, that summary judgment was also appropriate because Daniels's only claim rests on factual assertions that are defeated by evidence of discharge paperwork provided to and read by Harmony. We affirm the circuit court's grant of summary judgment.

I. *Factual Background*

Forty-two-year-old Harmony Daniels died of a pulmonary embolism on August 5, 2017. On August 1, 2017—four days before she died—she had been prescribed diclofenac sodium, a medication that can cause blood clots, for ankle pain. On August 4, Harmony and her husband, Daniels, spent the night at a hotel in downtown Little Rock to celebrate their wedding anniversary. Harmony woke up early in the morning on Saturday, August 5, with severe pain and swelling in her right calf. Around 10:00 a.m., Daniels took Harmony to the emergency department at Baptist Health Little Rock. Dr. Wayne Lyle, M.D., was her treating physician. Dr. Lyle ordered an ultrasound, which revealed a large blood clot known as deep vein thrombosis ("DVT") extending from her proximal right femoral vein through her calf.

Dr. Lyle informed Harmony and Daniels of the diagnosis; prescribed her an anticoagulant, Xarelto; and told her to continue walking. Harmony was discharged from the hospital and given discharge instructions. Around 5:00 that afternoon, Harmony collapsed and lost consciousness while walking in downtown Little Rock. She was taken to the University of Arkansas for Medical Sciences ("UAMS") emergency room, but she never regained consciousness. She was pronounced dead just after 7:00 p.m. Dr. Frank Peretti performed an autopsy and determined that Harmony's cause of death was pulmonary embolism due to DVT of the right leg.

On August 27, 2018, Daniels, on behalf of himself, his minor daughter, and Harmony's estate, filed a medical-malpractice lawsuit pursuant to Arkansas Code Annotated section 16-114-206 (Repl. 2016) against C. Wayne Lyle, M.D., P.A. Daniels pleaded that his "cause of action is brought exclusively under the 'common knowledge' exception" of section 16-114-206(a), and he affirmatively disclaimed any causes of action that would require expert medical testimony under section 16-114-206. Daniels asserted that Dr. Lyle breached his duty of "ordinary care" because he "did not tell Harmony Daniels that her '[e]xtensive deep vein thrombosis' was a life-threatening condition." He claimed that Dr. Lyle's breach was the proximate cause of Harmony's death. Although he initially named C. Wayne Lyle, M.D., P.A, as the sole defendant, Daniels later amended his complaint three times to add C. Wayne Lyle, M.D., individually, and Medical Services Group, Ltd. (collectively the "Lyle appellees"), as well as Baptist Health and Diamond Risk Insurance LLC (collectively the "Baptist Health

appellees") as defendants.[1] The Lyle appellees and Baptist Health appellees filed answers denying the material allegations.

During the next few years, the parties filed a series of competing summary-judgment motions. In May 2019, the Lyle appellees and the Baptist Health appellees filed nearly identical motions for summary judgment alleging that the applicable standard of care, the breach of that standard, and the medical causation for Daniels's claim were not matters of common knowledge that lie within a jury's comprehension. Thus, Daniels was required to provide expert testimony to support each element of his claim, and because he had not done so, the Lyle and Baptist Health appellees argued that they were entitled to judgment as a matter of law. On August 23, 2019, the circuit court denied appellees' motions for summary judgment because Daniels's deadline to designate a case-in-chief expert had not yet passed. That deadline was May 22, 2020.

On May 22, 2020, Daniels did not designate a case-in-chief expert, but he did file a motion for partial summary judgment with respect to liability against all appellees, claiming that he had met his burden of proof on all elements of his medical-malpractice "common knowledge" case without using experts. The Lyle appellees, in turn, filed a competing motion for summary judgment alleging that Harmony "was provided comprehensive information

---

[1]Although Daniels did not name her as a defendant, he further alleged that Manuela Debacker, RN, Harmony's treating nurse on August 5, knew that Harmony's DVT "was a life-threatening condition," that Nurse Debacker did not inform Harmony or Daniels that Harmony's DVT was life threatening, that Debacker was acting as an employee or agent of Baptist Health within the course and scope of her employment, and that her actions and omissions were imputed to Baptist Health.

about her condition, including that it could 'lead to serious and even[ ] life-threatening complications if the clot travels to the lungs' and that she read it." They attached an affidavit from their expert, Randolph P. Maddox, M.D., who stated that the "[s]tandard of care [for] patient diagnosis, treatment, and how patients are to be provided instruction regarding diagnoses and treatment recommendations is something that is taught in medical school and residency because it is not a matter of common knowledge." Dr. Maddox further stated that Dr. Lyle's treatment of Harmony was "all within the applicable standard of care." Relying on that affidavit, the Lyle appellees asserted that Daniels failed to meet proof with proof.

The Baptist Health appellees filed a renewed summary-judgment motion several days later also contending that this is not a common-knowledge-exception case, and because Daniels chose not to disclose a case-in-chief standard-of-care expert against Baptist Health, summary judgment should be granted. The Baptist Health appellees relied on an expert disclosure from Michelle Parish, APRN, as their standard-of-care expert, who opined that the standard of care for Baptist Health emergency nurses at the time of patient discharge is not a matter of common knowledge. On September 21, 2020, the circuit court denied all parties' summary-judgment motions and ordered the parties into mediation, to be completed by November 30.

In October 2021, the Lyle appellees and the Baptist Health appellees again filed motions for summary judgment. By this time, Daniels had disclosed Dr. Frank Peretti as his only medical expert witness. Dr. Peretti testified in his deposition regarding Harmony's autopsy and cause of death; however, Dr. Peretti did not offer an opinion on whether the

5

defendants were guilty of medical negligence. The Lyle appellees and Baptist Health appellees asserted that Dr. Peretti provided "zero evidence that Ms. Daniels's death was proximately caused by any negligent action or inaction by the defendants."

Following a November 2021 recusal by the Twelfth Division circuit court judge, the case was reassigned to the Fourth Division. On December 1, 2021, Daniels filed a renewed motion for summary judgment against all defendants on the issue of liability and reasserted that every element of his medical-negligence claim was a matter of common knowledge. The circuit court held a hearing on January 21, 2022. On February 2, 2022, it entered an order granting appellees' motions for summary judgment and denying Daniels's motion for partial summary judgment. It found that:

> Plaintiff alleges that all Defendants have admitted duty and foreseeability, that the elements of their case lie within the common knowledge provision of the Arkansas Medical Malpractice Act, and that there are no genuine issues of material fact. . . .
>
> . . . .
>
> The Court has reviewed the attached exhibits filed by the Defendants – namely the oral deposition of Dr. Peretti and an affidavit of Dr. Maddox. The Plaintiff has provided no affidavits or depositions, only the arguments made in the pleadings and at the January 31 hearing. The Court finds that Dr. Maddox'[s] Affidavit is particularly significant because it outlines the standard of care in a situation like this one. His testimony further opines that, within a reasonable degree of medical certainty, there were no alternate health care options for the deceased to investigate or exercise that would have offered a better chance of survival. Dr. Maddox asserts that this is a rare type of event most often resulting in death, even when a patient is in the hospital at the time of the occurrence. Even if the deceased had been admitted to the hospital while undergoing the recommended treatment, the Court is convinced that there would have been nothing to do for her that would have changed this outcome.

Plaintiff's witness Dr. Peretti[ ] corroborates this sufficiently that the Court is satisfied that there exists no genuine issue of material fact. Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the movant is entitled to judgment as a matter of law. *Rice v. Tanner*, 363 Ark. 79 (2005). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof to demonstrate the existence of a material issue of fact. *Id.* In the instant case, Plaintiff has not met the Defendant's proof with proof, and the Court finds that the Defendants are entitled to summary judgment.

On March 4, 2022, Daniels filed a notice of appeal, and this appeal followed.

## II. *Jurisdictional Issue*

The Lyle appellees raise a jurisdictional issue in their brief that although the notice of appeal was timely, it was faulty because Daniels did not designate the complete record on appeal. Thus, pursuant to Ark. R. App. P.–Civ. 3(g), he needed to serve with his notice of appeal a concise statement of the points on which he intended to rely on appeal. Daniels did not do so.

Our supreme court has said that the purpose of this rule is to prevent prejudice and afford the appellees an opportunity to require that there be included in the record any matter not designated by the appellant. *See Jones v. Adcock*, 233 Ark. 247, 248, 343 S.W.2d 779, 780 (1961). We have said in a case with multiple points on appeal that points not designated in the notice of appeal are not preserved for appeal. *Morales v. Arias*, 2022 Ark. App. 174, at 11, 643 S.W.3d 883, 891. Here, Daniels raised only one point on appeal, which was the only point ruled on in the circuit court's order granting summary judgment, and which is fully briefed by the parties. Moreover, this court previously remanded this case to settle the record on May 29, 2024. *Daniels v. Lyle*, 2024 Ark. App. 350, at 3. The court directed Daniels to

7

supplement the record within forty-five days with numerous pleadings and a hearing transcript that were necessary to our review of the issues on appeal. *Id.* at 2–3. Daniels timely filed his supplemental record consisting of almost one thousand pages of additional circuit court documents. In this circumstance, we find that the appellees have not been prejudiced, and we proceed to the merits of the appeal.

III. *Point on Appeal*

For his sole point on appeal, Daniels argues that the circuit court's order should be reversed because it used the wrong burden of proof in granting summary judgment in favor of the Lyle and Baptist Health appellees. Daniels contends that the circuit court was required to use the burden of proof outlined in *Lanier v. Trammell*, 207 Ark. 372, 180 S.W.2d 818 (1944), as the burden of proof to establish that the circumstantial evidence of appellees' medical-malpractice negligence "lies within the jury's comprehension as a matter of common knowledge" under Arkansas Code Annotated section 16-114-206(a). Instead, he claims, the circuit court incorrectly used the burden of proof in section 16-114-206(a)(1)–(3), which is the burden of proof applicable in a medical-malpractice cause of action that uses expert testimony. Appellees respond that Daniels cannot "plead around" the requirements of the Medical Malpractice Act, sections 16-114-201 et seq., by asserting that his claim involves common knowledge and, thus, requires no supporting expert testimony. They assert that Daniels's claim required expert testimony under Arkansas law, and because he lacked that necessary expert testimony, the circuit court correctly granted summary judgment.

A circuit court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated and that the party is entitled to judgment as a matter of law. *Scott v. Nichol*, 2022 Ark. App. 255, at 4, 645 S.W.3d 369, 372. Once the moving party has established a prima facie case showing entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* at 4–5, 645 S.W.3d at 372. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* at 5, 645 S.W.3d at 372.

Here, Daniels argues on appeal that he was not required to produce expert testimony to survive a summary-judgment motion on his claim that appellees never told Harmony that DVT is a life-threatening condition because he pleaded only a "common knowledge" cause of action under section 16-114-206(a). He asserts that appellees had admitted the "duty" and "foreseeability" elements of the claim, leaving only the issue of proximate causation, which, Daniels asserts, may be established by circumstantial evidence pursuant to *Lanier*, *supra*.

A. Section 16-114-206 and *Lanier*

In evaluating Daniels's argument on appeal, we first look at the statute governing the burden of proof for a medical-malpractice claim. Arkansas Code Annotated section 16-114-206(a)(1)–(3) states:

(a) In any action for medical injury, *when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge*, the plaintiff shall have the burden of proving:

(1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant, the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality;

(2) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant that the medical care provider failed to act in accordance with that standard; and

(3) By means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred.

(Emphasis added.)[2]

Daniels has attempted to bring his lawsuit solely under section 16-114-206(a) and has "affirmatively disclaime[d] any and all causes of action that would require expert medical testimony under A.C.A. § 16-114-206." He appears to assert that section 16-114-206(a)—which states that "when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving"—can be read wholly separate from the remainder of that statute, section 16-114-206(a)(1)–(3)—which states that expert testimony is required to prove standard of care, breach of that standard,

---

[2]The portion of this statute limiting expert opinions to medical-care providers of the same specialty as the defendant was held unconstitutional in *Broussard v. St. Edward Mercy Health Sys.*, 2012 Ark. 14, 386 S.W.3d 385.

and proximate causation. For example, in his brief, he states that "[t]he 'standard of care' is never relevant in a 'common knowledge' cause of action made under the first sentence of A.C.A. § 16-114-206(a)."

As a preliminary point, we disagree with Daniels's reading of the statute. A statute must be analyzed in its entirety with meaning given to all portions. *Com. Printing Co. v. Rush*, 261 Ark. 468, 473, 549 S.W.2d 790, 793–94 (1977). A portion of the statute cannot be read in a vacuum, and Daniels has cited no authority for the proposition that the first part of section 16-114-206(a) can be read independently from the remainder of that statute.

Indeed, our caselaw is clear that expert testimony is unnecessary only if each element in section 16-114-206(a)(1)–(3) is a matter of common knowledge. We have said repeatedly that a plaintiff may proceed on his claim for medical negligence without the required expert testimony, but only if he can establish that (1) the asserted negligence lies within the jury's comprehension as a matter of common knowledge, (2) the applicable standard of care is a matter of common knowledge, and (3) the jury does not need assistance of experts to decide the issue of negligence. *See, e.g.*, *Johnson v. Schafer*, 2018 Ark. App. 630, at 8, 565 S.W.3d 144, 149. Because Daniels has pleaded this case pursuant to section 16-114-206, which clearly states the burden of proof for a medical-malpractice case, we reject any attempt to import a different burden of proof into this lawsuit. *See Young v. Gastro-Intestinal Ctr., Inc.*, 361 Ark. 209, 212, 205 S.W.3d 741, 744 (2005) ("[T]he burden of proof for a plaintiff in a medical malpractice case is fixed by statute.").

11

Despite acknowledging that the "jurisdiction of the medical malpractice statute applies," Daniels relies on a 1944 Arkansas Supreme Court opinion, *Lanier*, *supra*, to establish his burden of proof. In *Lanier*, a patient developed a severe infection in his left eye and sustained some loss of vision following a minor eye surgery. The supreme court concluded that the jury could find that the infection was proximately caused by the doctor's negligence because the doctor failed to sterilize his instruments and wash his hands before performing the procedure. *Id.* at 377–78, 180 S.W.2d at 820-21. This was the holding even though the patient's negligence claim was not supported by the testimony of an expert witness. The supreme court held:

> If there could, under the testimony, be any dispute as to the method used in the operation or in the treatment of the patient it would be necessary to establish the correct method by expert witnesses, but we do not have that situation here. There was no dispute whatever as to what was the proper course to be pursued by appellant in preparing for and performing the operation. It was not denied that it was necessary and proper for appellant to cleanse his hands thoroughly and to sterilize his instruments. The dispute in this case was as to whether or not appellant followed the course which is conceded to be necessary and proper. Appellant says that he did and appellee and one of his witnesses testified that he did not follow this course. No amount of expert testimony could have thrown any light whatever on the real question in this case.

*Id.*

The principle from *Lanier*—that expert testimony is not needed when it will shed no light on the issue of medical malpractice alleged in the lawsuit—has persisted, but the law regarding expert testimony in medical-malpractice cases has evolved considerably since *Lanier* was handed down. Importantly, *Lanier* predated the Medical Malpractice Act, which

12

announced the burden of proof for claims brought under the Act. *See* Act 709 of 1979 (codified at Ark. Stat. Ann. § 34-2614 (Supp. 1979)). Under the burden-of-proof statute, as amended in 2003, *see* Act 649 of 2003, § 18, unless the asserted negligence could be comprehended by a jury as a matter of common knowledge, the plaintiff has the burden of proving three propositions by expert testimony: the applicable standard of care; that the medical provider failed to act in accordance with that standard; and that such failure was the proximate cause of the plaintiff's injuries. *Stewart v. Deaton*, 2021 Ark. App. 73, at 6, 618 S.W.3d 181, 185 (citing Ark. Code Ann. § 16-114-206(a)).

Having said that, this court has continued to hold that expert testimony is not necessary in every malpractice case. *See Dodd v. Sparks Reg'l Med. Ctr.*, 90 Ark. App. 191, 197, 204 S.W.3d 579, 583 (2005). Classic examples in which these elements are satisfied without the need for an expert include instances when a surgeon might fail to sterilize the instruments, wash his hands, or remove a sponge before closing an incision. *Id.* (citing *Lanier*, *supra*). However, the vast majority of cases analyzing the issue have held that expert medical testimony is necessary because the alleged medical negligence is not within the comprehension of a jury of laymen. *See, e.g.*, *Mitchell v. Lincoln*, 366 Ark. 592, 599, 237 S.W.3d 455, 460 (2006) (collecting cases). The supreme court and this court have also previously rejected parties' attempts to frame medical-negligence claims in which expert-testimony was necessary as common-knowledge claims. *See id.*; *Taylor v. Landherr*, 101 Ark. App. 279, 284, 275 S.W.3d 656, 660 (2008).

B. Application of the Burden of Proof in This Case

Turning to the facts here, Daniels's sole claim for negligence was that appellees never told Harmony that DVT is a life-threatening condition. He asserted that this claim could be proved within the "common knowledge" exception to the expert-testimony requirement in section 16-114-206(a)(1)–(3) because appellees had admitted the "duty" and "foreseeability" elements of his claim, leaving only the issue of proximate causation, which, he argues, may be established by circumstantial evidence under *Lanier.* The circuit court rejected Daniels's arguments and granted summary judgment in favor of appellees, relying in large part on appellees' experts' opinions and finding that Daniels failed to meet proof with proof.

We find no burden-of-proof error in the circuit court's order for several reasons. First, Daniels brought this claim within the jurisdiction of the Medical Malpractice Act but attempted to plead only a "common knowledge" cause of action under section 16-114-206(a), not under section -206(a)(1)–(3). As discussed above, Daniels cannot circumvent the burden of proof for medical-malpractice cases since the statute must be read as a whole.

Second, his reliance on *Lanier* to avoid the need for an expert is unavailing. Although *Lanier* continues to provide limited authority when the asserted negligence lies within the comprehension of a jury of laymen, such as a surgeon's failure to sterilize his instruments or remove a sponge from an incision before closing it, *see Nelms v. Martin*, 100 Ark. App. 24, 30, 263 S.W.3d 567, 572 (2007), the present case is factually distinguishable from those examples. Furthermore, *Lanier* is inapplicable to this case because in *Lanier*, the proper course of conduct for the surgeon, "to cleanse his hands thoroughly and to sterilize his instruments," was undisputed, and the issue in that case was whether the surgeon followed the proper

14

course. 207 Ark. at 377, 180 S.W.2d at 821. Here, unlike in *Lanier*, appellees dispute all elements of this medical-malpractice claim. Although Daniels claims that appellees admitted they had a duty to "tell Harmony Daniels that she had a life-threatening condition," the circuit court made no findings on the allegation of any admissions by appellees. Moreover, a review of Daniels's evidence supporting that assertion does not, in fact, reveal such an admission,[3] nor does it demonstrate the applicable standard of care in this case or that the standard is a matter of common knowledge.

Here, the Lyle appellees (through Dr. Maddox) and the Baptist Health appellees (through APRN Parish) produced expert testimony on standard of care and proximate causation. Dr. Maddox opined that

---

[3]Daniels relies on the following evidence in support of his contention that appellees admitted they had a duty to tell Harmony that she had a life-threatening condition: (1) Baptist Health "Patient Rights and Responsibilities" documents from 2001 and 2016 stating, "As a patient, you . . . have the right . . . [t]o know your diagnosis, treatment, health status, and any known prognosis. You may at your own request and expense consult with a medical specialist[;]" and (2) February 2020 depositions of Dr. Lyle and Nurse Debacker. In refuting that any of these items constituted an admission that the Lyle or Baptist Health appellees had a duty to tell Harmony that she had a life-threatening condition, they note that the 2001 and 2016 Patient Rights and Responsibilities documents were general statements, not from Harmony's 2017 hospital visit, and they do not contain any such admission. They further point to Dr. Lyle's deposition testimony in which he testified that his "normal practice" is to tell patients that if a blood clot breaks off, it can kill you—and that he communicated this to Harmony. Appellees note that Dr. Lyle did not say there is a duty to tell a patient that DVT is a "life-threatening condition." In Nurse Debacker's deposition, she testified that she had previously heard a Baptist Health emergency-room physician tell a DVT patient that it could kill the patient, but appellees point out that Nurse Debacker did not admit any duty of any physician to communicate that information to a patient. After reviewing this evidence, we see no admission from appellees that they had a duty to inform Harmony that she had a life-threatening condition.

15

[i]t takes years of study and training to be familiar with the standard of care applicable to Emergency Medicine physicians. Standard of care [for] patient diagnosis, treatment, and how patients are to be provided instruction regarding diagnoses and treatment recommendations is something that is taught in medical school and residency because it is not a matter of common knowledge.

APRN Parish opined that "[h]ow discharge instructions are given, including what information to relay regarding a diagnosis of DVT, are all things learned in nursing school and further developed in clinical practice. These are not matters of common knowledge." Dr. Maddox and APRN Parish further opined that Dr. Lyle and Nurse Debacker satisfied the standard of care in their treatment of Harmony.

Appellees argue that *Taylor* is authoritative. In *Taylor*, this court held that a jury would need expert testimony to evaluate a patient's negligence claims against her doctor, which included claims that the doctor discharged her prematurely from the hospital, failed to provide adequate follow-up care, failed to properly diagnose and treat her infection, and failed to dictate timely reports. *Taylor*, 101 Ark. App. at 283–84, 275 S.W.3d at 659–60. This court held that the patient's claims against her doctor were not matters of common knowledge and that, absent expert testimony supporting her allegations, she had no proof of the standard of care, deviation, or proximate cause—all essential elements of her claims. *Id.* at 284, 275 S.W.3d at 660. It also held that the claims against the hospital for failing to supervise the physician as he prepared his operative and discharge summaries required expert testimony. *Id.* The court stated that "[t]he jury would need to hear from a witness with specialized knowledge before it could determine the level of record-keeping oversight required in a hospital setting." *Id.* Because the patient failed to support her claims against

the doctor or hospital with expert testimony, both parties were entitled to judgment as a matter of law. *Id.*

We agree that *Taylor* is helpful to our analysis here. This case pertains to what information medical providers should have provided to Harmony about her DVT before she was discharged from the hospital. Appellees presented two experts who stated that the standard of care in this case is not a matter of common knowledge and that, in any event, Dr. Lyle and Nurse Debacker satisfied the applicable standard of care in their treatment of Harmony. Faced with these expert opinions, Daniels brought forth no expert on standard of care, breach of that standard, or proximate causation but instead argued that his claim was a common-knowledge claim under section 16-114-206(a) and "does not permit or require expert testimony."[4] As in *Taylor*, a jury in this case would require expert testimony to evaluate Daniels's claims against the Lyle and Baptist Health appellees. Absent expert testimony to "meet proof with proof," the circuit court correctly granted the Lyle and Baptist Health appellees judgment as a matter of law. Accordingly, we see no incorrect application of the burden of proof in this case, and we affirm the circuit court's grant of summary judgment in

---

[4]Although not dispositive, it is telling that Daniels simultaneously argued below that his negligence claim was a matter of common knowledge and also that "Harmony (a person with zero medical training)" should not have been expected to independently determine that her life was in danger through an internet search on her cell phone and from studying paperwork she was handed as she left the hospital. Daniels refers to that idea as an "absurdity." As appellees point out, if this claim was a matter of common knowledge, then the discharge paperwork and internet phone search should have been sufficient to advise Harmony that her DVT was life threatening. The fact that Daniels calls that proposition an "absurdity" further supports the conclusion that this was not a matter of common knowledge and that expert testimony was required.

favor of the Lyle and Baptist Health appellees. Because we affirm on the issue presented by Daniels, we need not address appellees' alternate ground for affirmance.

IV. *Conclusion*

For the reasons stated above, we affirm.

GLADWIN and HARRISON, JJ., agree.

*Joe Woodson*, for appellants.

*Friday, Eldredge & Clark, LLP*, by: *T. Michelle Ator* and *Joshua C. Ashley*, for separate appellees C. Wayne Lyle, M.D.; C. Wayne Lyle, M.D., P.A.; and Medical Services Group, Ltd.

*Wright, Lindsey & Jennings LLP*, by: *Gary D. Marts, Jr.*, and *David C. Yung*, for separate appellees Baptist Health and Diamond Risk Insurance, LLC.